THE STATE OF OHIO, APPELLEE, *v.* LORRAINE, APPELLANT.

[Cite as *State v. Lorraine* (1993), 66 Ohio St.3d 414.]

(No. 90-1927—Submitted January 12, 1993—Decided June 16, 1993.)

*Dennis Watkins*, Trumbull County Prosecuting Attorney, and *Peter J. Kontos*, Assistant Prosecuting Attorney, for appellee.

*James Kura*, Ohio Public Defender, *Richard J. Vickers* and *JoAnn Bour-Stokes*, Assistant Public Defenders, for appellant.

ALICE ROBIE RESNICK, J.

## A

### 1

Appellant alleges in his first proposition of law that the trial court applied an incorrect standard of mitigation as to his capacity to conform his conduct to the requirements of the law.

Appellant failed to raise this issue in the court below and, as such, he has waived the alleged error. *State v. Moreland* (1990), 50 Ohio St.3d 58, 552 N.E.2d 894; *State v. Broom* (1988), 40 Ohio St.3d 277, 533 N.E.2d 682. Nevertheless, we examine the merits of appellant's allegations, as R.C. 2929.05(A) requires review of this issue. Appellant alleges that the trial court used the insanity standard in its sentencing opinion instead of the mitigation standard. The mitigation standard is:

"Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law[.]" R.C. 2929.04(B)(3).

Contrary to appellant's assertion, the trial court did use the proper standard, as shown by its reference to "the question of mental disease or defect and the lack of substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law."

Appellant's expert witness stated that appellant did not have a mental disease but that his personality disorder could be interpreted as a mental

defect. The psychiatrist for the state testified that appellant did not suffer from any mental disease or defect. The trial court agreed with the opinion of the state's expert and used the proper test. Additionally, the court stated that it "found little credible evidence to give much weight to this factor." Appellant has failed to show error. Accordingly, this proposition is not well taken.

2

Appellant in his second proposition of law contends that he was denied a fair trial because the trial court refused to instruct the jury concerning mercy and prohibited him from asking the jury to err on the side of mercy.

This court has previously considered a similar issue. We held in *State v. Jenkins* (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264, paragraph three of the syllabus:

"The instruction to the jury in the penalty phase of a capital prosecution to exclude consideration of bias, sympathy or prejudice is intended to insure that the sentencing decision is based upon a consideration of the reviewable guidelines fixed by statute as opposed to the individual juror's personal biases or sympathies."

In *California v. Brown* (1987), 479 U.S. 538, 543, 107 S.Ct. 837, 840, 93 L.Ed.2d 934, 941, the court stated:

"An instruction prohibiting juries from basing their sentencing decisions on factors not presented at the trial, and irrelevant to the issues at the trial, does not violate the United States Constitution. It serves the useful purpose of confining the jury's imposition of the death sentence by cautioning it against reliance on extraneous emotional factors, which, we think, would be far more likely to turn the jury against a capital defendant than for him."

While the court in *Brown* was specifically considering the issue of sympathy, its reasoning is applicable also to a plea for mercy.

Permitting a jury to consider mercy, which is not a mitigating factor and thus irrelevant to sentencing, would violate the well-established principle that the death penalty must not be administered in an arbitrary, capricious or unpredictable manner. *Brown, supra,* at 541, 107 S.Ct. at 839, 93 L.Ed.2d at 939; *Gregg v. Georgia* (1976), 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859; *Furman v. Georgia* (1972), 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346. The arbitrary result which may occur from a jury's consideration of mercy is the exact reason the General Assembly established the procedure now used in Ohio.

R.C. 2929.03(D)(2) provides that "[i]f the trial jury unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances the

offender was found guilty of committing outweigh the mitigating factors, the trial jury *shall* recommend to the court that the sentence of death be imposed on the offender." (Emphasis added.) This statutory requirement eliminates the subjective state of mind the issue of mercy generally adds to a jury's deliberation.

Mercy, like bias, prejudice, and sympathy, is irrelevant to the duty of the jurors. Appellant's counsel therefore was not allowed to plead for mercy, although he was permitted to plead for appellant's life based upon the statutory mitigating factors. Accordingly, this proposition is not well taken.

### 3

Appellant alleges in his third proposition of law that the court of appeals applied an incorrect harmless-error standard in reviewing prosecutorial misconduct. Appellant also alleges that the trial court improperly considered mitigation factors not in evidence. Specific allegations of errors and misconduct are considered in other propositions of law.

### 4

Appellant alleges in his fourth proposition of law that he was deprived of a fair trial by the misleading definitions of "aggravating circumstances" and "mitigating factors" used by the trial judge and the prosecutor during voir dire.

During voir dire the prosecutor stated to several prospective jurors that aggravating circumstances are "bad things" and that mitigating factors are "good things." The trial judge also used these terms.

The use of these terms was never objected to by defense counsel. Since there was no objection to these terms, appellant has waived any error. *State v. Wade* (1978), 53 Ohio St.2d 182, 7 O.O.3d 362, 373 N.E.2d 1244. Moreover, plain error was not established, *i.e.*, no showing that, but for these terms, the outcome of the trial would have been different. Accordingly, this proposition is not well taken.

### 5

In his fifth proposition of law appellant alleges that the trial court unreasonably restricted voir dire.

The manner in which voir dire is to be conducted lies within the sound discretion of the trial judge. Appellant contends that the trial judge abused his discretion by not permitting him to inquire of potential juror Sara Perry as to her views on the death penalty. We find that Perry stated, unequivocally, that she would not sign her name to any document that would have the effect of sentencing the defendant to death. Perry stated: "I have mulled over it in

my mind and come at it in various ways, and deep inside me, Sara cannot sign her name or whatever you have to do to put another human being to death." The prosecution's motion to excuse her for cause was granted by the court. Defense counsel neither asked to question the juror nor did he object to her dismissal. His failure to object waived any error. Moreover, there has been no showing that the court abused its discretion in dismissing this juror.

A thorough review of the voir dire examination fails to exhibit that the trial court unreasonably or arbitrarily restricted examination. The voir dire in this case comprised 1,442 pages of transcript. In *State v. Durr* (1991), 58 Ohio St.3d 86, 89, 568 N.E.2d 674, 678, we stated that "[a]lthough R.C. 2945.27 affords the prosecution and defense the opportunity to conduct a reasonable examination of prospective jurors, * * * the trial court reserves the right and responsibility to control the proceedings of a criminal trial pursuant to R.C. 2945.03, and must limit the trial to relevant and material matters with a view toward the expeditious and effective ascertainment of truth." Accordingly, this proposition is not well taken.

## 6

Appellant in his sixth proposition of law alleges various instances of prosecutorial misconduct. Specifically, appellant first objects to the following comment the prosecutor made while objecting to a question of defense counsel: "Your Honor, I'm going to object. It's hearsay. Let the Defendant testify, Your Honor." This passing reference to appellant's failure to testify can only be regarded as harmless, in view of the overwhelming evidence of aggravating circumstances and the dearth of mitigation.

Appellant next challenges the prosecutor's comments on his unsworn statement, during closing arguments. This court has previously considered this issue in *State v. DePew* (1988), 38 Ohio St.3d 275, 285, 528 N.E.2d 542, 554, wherein we stated that "the prosecution may comment that the defendant's statement has not been made under oath or affirmation, but such comment must be limited to reminding the jury that the defendant's statement was not made under oath in contrast to the testimony of all other witnesses." The prosecutor's comment went beyond these limits by referring not only to credibility but also to appellant's silence on particular issues and to the lack of cross-examination. However, this misconduct was harmless beyond a reasonable doubt.

Appellant also contends that he was prejudiced by the prosecutor's "appeal to community sentiment" in both voir dire and closing argument. As this court noted in *State v. Williams* (1986), 23 Ohio St.3d 16, 20, 23 OBR 13, 17, 490 N.E.2d 906, 911, "[a] request that the jury maintain community standards is not equivalent to the exhortation that the jury succumb to public demand

* * *." The evidence in this case was so overwhelming that none of the prosecutor's comments, even if error, amounted to prejudicial error. This court held in *State v. Jenkins* (1984), 15 Ohio St.3d 164, 217, 15 OBR 311, 357, 473 N.E.2d 264, 310, at fn. 49, that instances of prosecutorial misconduct can be harmless when they are incidental and isolated.

Appellant next argues that the prosecutor argued, and the trial court considered, nonstatutory aggravating circumstances throughout the trial. However, it is clear that the prosecutor argued and the court discussed the nature and circumstances of the crime, not nonstatutory aggravating circumstances. We held in *State v. Jester* (1987), 32 Ohio St.3d 147, 153, 512 N.E.2d 962, 969, that "[d]iscussion of circumstances other than statutory aggravating circumstances is not *per se* error. Juries and judges must consider the nature and circumstances of the offense, as well as the statutory aggravating circumstances, in determining whether the death penalty is appropriate." There is no evidence presented that the prosecutor attempted to argue that the nature and circumstances of the crime were aggravating circumstances, or that the court implied to the jury that they were.

Appellant finally argues that he was prejudiced because the state brought out evidence of the facts of another related death penalty prosecution. The other case was used to illustrate the difference between the defendant in that case, who suffered from mental defect, and appellant in this case, who did not. The jury was aware that this was a different case. Again appellant has failed to show how he was prejudiced.

Accordingly, this proposition is not well taken.

7

Appellant in his seventh proposition of law alleges that the trial court improperly allowed the state to introduce victim-impact evidence both in the guilt and penalty phases of the trial.

Appellant argues that it was prejudicial to introduce evidence of the victims' advanced age, the length of their marriage, their physical weaknesses, Doris's mental alertness, their suffering, and the lack of clothing on one of the victims when found.

Appellant argues that the above is inadmissible character evidence that undermined the reliability of the verdict. For the most part, this evidence illustrated the nature and circumstances of the crimes, since the physical condition and circumstances of the victims are relevant to the crime as a whole. The victims cannot be separated from the crime. Appellant apparently believes that illustrating the lifestyles of the victims would cause the jury to empathize with the victims. Even if this were so, it is difficult to find

prejudice when the facts of this case are viewed as a whole. Compared to appellant's own description of the brutal murders in the statement read to the jury, the presentation of the lifestyles of the victims can hardly be deemed prejudicial.

Appellant argues that the use of similar victim-impact evidence in the penalty phase violated *Booth v. Maryland* (1987), 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440. However, *Payne v. Tennessee* (1991), 501 U.S. ——, 111 S.Ct. 2597, 115 L.Ed.2d 720, overruled *Booth* after appellant's brief was filed. Moreover, this court in *State v. Combs* (1991), 62 Ohio St.3d 278, 283, 581 N.E.2d 1071, 1077, cited *Payne* for the proposition that "the mention of the victims' personal situations and their relatives did not violate the Constitution." Thus we find this proposition not well taken.

## 8

Appellant alleges in his eighth proposition of law that he was deprived of a fair trial by the court's admission of evidence of unrelated misconduct.

To be admitted pursuant to R.C. 2945.59 and Evid.R. 404(B), evidence must show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The evidence complained of was of the following acts: preying on the elderly, stealing automobiles, stabbing another elderly woman, shooting a handgun stolen from the Montgomerys in a populated area on the night of the murders, attempting another breaking and entering on the night of the murders, being under sentence for breaking and entering, prior thefts from the murder victims, and having a juvenile record. All of the evidence of other acts on the night of the murders was related in some manner to the crimes for which appellant was on trial. For example, the testimony with regard to stealing a car that night buttresses the testimony of appellant himself and details the events surrounding the murder. Since appellant confessed to the murders, it is difficult to see how he could have been prejudiced by the admission of this evidence. Accordingly, this proposition is not well taken.

## 9

Appellant in his ninth proposition of law alleges that the trial court considered nonstatutory aggravating circumstances and failed to give effect to offered mitigation.

The trial court in its sentencing opinion used the following language:

" * * * [T]he following matters were considered by the Court as part of the aggravating circumstances:

"A) The manner in which the aggravated burglary and murder were committed, including:"

The court then listed eighteen factors which instead showed the nature and circumstances of the offense. Appellant argues that the court considered all of these eighteen factors as nonstatutory aggravating circumstances.

Appellant cites *State v. Davis* (1988), 38 Ohio St.3d 361, 528 N.E.2d 925, as authority. In *Davis*, we reversed the death sentence because the trial court considered nonstatutory aggravating circumstances. In *Davis*, the trial court specifically listed as aggravating circumstances what instead showed the nature and circumstances of the crime. This skewed the weighing process, thereby making the sentence unreliable.

In this case, the court used the language "as part of the aggravating circumstances." It is clear to this court that the trial court was referring to the nature and circumstances of the offense. A court can refer to the nature and circumstances of the offense to show why the aggravating circumstances outweigh the mitigating factors. *State v. Lott* (1990), 51 Ohio St.3d 160, 555 N.E.3d 293; *State v. Stumpf* (1987), 32 Ohio St.3d 95, 99–100, 512 N.E.2d 598, 604. We believe that the use of the words "as part of" shows knowledge on the part of the trial court that the factors were not necessarily aggravating circumstances; otherwise, the trial court would have called them simply "aggravating circumstances." Nevertheless, even if the court improperly considered nonstatutory aggravating circumstances, this court's independent review cures this error. *State v. Lott.*

Appellant next contends that the trial court failed to give effect to certain mitigating evidence, including appellant's age, drug and alcohol abuse, personal and family history. After a thorough review of the trial opinion no merit is found to this contention. The trial court specifically addressed all of these factors. The weight to be given to specific mitigating evidence is left to a sentencing authority's discretion. *State v. Mills* (1992), 62 Ohio St.3d 357, 376, 582 N.E.2d 972, 988.

Accordingly, this proposition is not well taken.

## 10

Appellant in his tenth proposition of law asserts that the trial court excluded mitigation evidence through the operation of the Rules of Evidence. Appellant argues that the Rules of Evidence should not apply to mitigation hearings. In *State v. Esparza* (1988), 39 Ohio St.3d 8, 11, 529 N.E.2d 192, 196, we specifically held that "the Rules of Evidence apply to the sentencing phase of a capital trial." Accord *State v. Glenn* (1986), 28 Ohio St.3d 451, 458, 28 OBR 501, 507, 504 N.E.2d 701, 708; *State v. Jenkins, supra,* 15 Ohio St.3d at

171, 15 OBR at 317, 473 N.E.2d at 275. Accordingly, this proposition is not well taken.

### 11

Appellant in his eleventh proposition of law alleges that he was deprived of a fair trial due to the prosecutor's failure to furnish the names of rebuttal witnesses.

The criterion for determining whether the state should have provided the name of a witness called for rebuttal is whether the state reasonably should have anticipated that it was likely to call the witness, whether during its case in chief or in rebuttal. *State v. Howard* (1978), 56 Ohio St.2d 328, 333, 10 O.O.3d 448, 451, 383 N.E.2d 912, 915. The prosecutor stated that he did not know he would use any of the witnesses until appellant's witnesses testified on direct. We hold that the prosecutor did not have a duty to provide the names of witnesses that he reasonably did not anticipate would testify until testimony was presented by appellant which was then properly rebutted.

Crim.R. 16(E)(3) gives the trial court discretion to determine a remedy for noncompliance with the discovery rule. The issue is whether the court abused its discretion.

After a thorough review of the record it is clear that the trial court did not abuse its discretion in permitting the witnesses to testify. The witnesses called by the prosecution properly rebutted appellant's evidence. Moreover, there was no evidence of bad faith or willful withholding of this evidence. Dr. Bertschinger was permitted to testify, but he was not cross-examined until after a one-day continuance that was granted at appellant's request. The testimony of the remaining witnesses was of minor importance, if any, and did not affect the outcome of the mitigation hearing. In addition, we have no cause to believe that, had defense counsel requested similar continuances in regard to the remaining witnesses, the court would not have granted them as it did for Dr. Bertschinger. We can find no prejudice to the appellant. Accordingly, this proposition is not well taken.

### 12

Appellant in his twelfth proposition of law alleges that the trial court abused its discretion in denying his motion for a continuance.

The grant or denial of a continuance lies within the sound discretion of the trial court. *State v. Unger* (1981), 67 Ohio St.2d 65, 21 O.O.3d 41, 423 N.E.2d 1078. On August 15, 1986, appellant moved for a continuance, asking that the trial date be moved from September 22 to December 1. The court granted a

continuance, but only to November 5. There has been no showing of an abuse of discretion. Accordingly, this proposition is not well taken.

### 13

Appellant in his thirteenth proposition of law alleges that the trial court erred in denying his motion to suppress his statements made to police. He claims that the statements were a product of his intoxication, that they were coerced after he invoked his right to remain silent and that subsequent written statements were "fruits of the poisonous tree." The evidence does not support the foregoing contentions. Detectives who interrogated appellant testified that they did not observe any indications that he was under the influence of drugs or alcohol during the interrogations. Additionally, according to the detectives, after the appellant invoked his right to silence, he continued on his own to talk, after the tape was turned off at his request. Therefore, the statement after he invoked his right to silence was admissible in accordance with *Edwards v. Arizona* (1981), 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378. Last, having found that the police did not employ any improper procedures in interrogating appellant, we find no merit in his contention that the written statements are the fruit of a poisonous tree. Accordingly, this proposition is not well taken.

### 14

Appellant in his fourteenth proposition of law alleges that the trial court failed to excuse prospective jurors who could not consider mitigating evidence, or who stated that they would automatically impose the death penalty on a defendant convicted of murder.

After a review of the record we find no support for appellant's contention. The jurors in question ultimately stated that they would follow the instructions of the trial judge. The responses of the jurors did not establish cause for removal under R.C. 2945.25(C). In determining challenges for cause, the judge complied with *Wainwright v. Witt* (1985), 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841, as followed by this court in *State v. Rogers* (1985), 17 Ohio St.3d 174, 17 OBR 414, 478 N.E.2d 984, vacated on other grounds (1985), 474 U.S. 1002, 106 S.Ct. 518, 88 L.Ed.2d 452. Accordingly, this proposition is not well taken.

### 15

Appellant argues that error occurred because the prosecutor asked prospective jurors during voir dire if they could impose the death penalty on "this defendant" or "this particular defendant," conceding that we have held that a prosecutor may ask prospective jurors if they could impose the death penalty

"in this case." This issue was resolved, after appellant's brief was filed, in *State v. Evans* (1992), 63 Ohio St.3d 231, 249–250, 586 N.E.2d 1042, 1057–1058, where this court found the language to be proper. See, also, *State v. Tyler* (1990), 50 Ohio St.3d 24, 553 N.E.2d 576. Accordingly, this proposition is not well taken.

## 16

Appellant alleges in his sixteenth proposition of law that he was denied a fair trial by the trial court's jury instructions in the penalty phase of trial.

Having reviewed the jury instructions in their entirety we agree with the conclusion of the court of appeals:

"Although it is apparent that the trial court misstated the balancing process at one point in the jury instructions, the court properly instructed the jury to balance the mitigating factors against the aggravating circumstances on at least eight occasions. Viewed in their entirety, the jury instructions were correct pursuant to R.C. 2929.03(D)(2)."

Appellant also asserts that the trial court erred by instructing on all the statutory mitigating factors where they were not at issue in this case. This court held in *State v. DePew* (1988), 38 Ohio St.3d 275, 289, 528 N.E.2d 542, 558, that the court may not comment on factors not in issue, but that doing so did not constitute reversible error. Accord *State v. Davis* (1991), 62 Ohio St.3d 326, 347–348, 581 N.E.2d 1362, 1379–1380, in which the trial court also instructed the jury that all of those factors need not be present before the jury could find that the aggravating circumstances do not outweigh the mitigating factors. That was done in this case.

Accordingly, this proposition is not well taken.

## 17

Appellant in his seventeenth proposition of law alleges that joinder of separate offenses occurring at different times and places was error.

Appellant asserts that the trial court erred by not severing the count of aggravated burglary of the Mercer residence from the other counts.

The crimes were part of a course of criminal conduct. See Crim.R. 8. Joinder was proper although the offenses were separate and distinct. See *State v. Benner* (1988), 40 Ohio St.3d 301, 305–306, 533 N.E.2d 701, 707–708. Moreover, appellant has failed to show how he was prejudiced, as required by Crim.R. 14 and *State v. Torres* (1981), 66 Ohio St.2d 340, 20 O.O.3d 313, 421 N.E.2d 1288. Accordingly, this proposition is not well taken.

### 18

Appellant in his eighteenth proposition of law alleges that the trial court erred by failing to inquire into the existence of a conflict of interest of court-appointed counsel.

Appellant argues that because the Public Defender Commission, which represented him, had in the past represented Perry Postlethwaite, a witness against appellant, a conflict of interest existed. Appellant, however, does not demonstrate on the record how he was prejudiced by such representation. This proposition of law is therefore without merit.

### 19

Appellant alleges in his nineteenth proposition of law that the court committed prejudicial error by commenting to the jury that its sentence was only a recommendation. We have held many times that such comments are within constitutional limits. *E.g., State v. Durr* (1991), 58 Ohio St.3d 86, 93–94, 568 N.E.2d 674, 682–683.

Accordingly, this proposition is not well taken.

### 20

Appellant in his twentieth proposition of law alleges that the sentencing process was unreliable and the sentence is inappropriate because of errors reviewed in other propositions of law. Having found no error this proposition is not well taken.

### 21

Appellant in his twenty-first proposition of law complains that in conducting proportionality reviews courts consider only cases in which the death penalty was imposed. This proposition is overruled on authority of *State v. Davis* (1992), 63 Ohio St.3d 44, 584 N.E.2d 1192.

### 22

Appellant in his twenty-second proposition of law challenges the Ohio death penalty statute. The statute has been found constitutional. *State v. Jenkins, supra* (15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264); *State v. Davis, supra* (63 Ohio St.3d 44, 584 N.E.2d 1192); *State v. Zuern* (1987), 32 Ohio St.3d 56, 512 N.E.2d 585.

### B

Having completed the review of the issues raised upon appeal, we must now make the separate and independent analysis required by R.C. 2929.05.

The facts of this case exhibit a planned, brutal, calculated and senseless killing of two elderly people, Doris Montgomery, age eighty, and Raymond Montgomery, age seventy-seven. The Montgomerys had been friendly and generous to the appellant in the past and they had hired him to perform tasks around their home. On the day in question the appellant got Mr. Montgomery to go to the second floor of his home on the pretense that he had forgotten an item. Upon entering the second floor room, the appellant, while wearing rubber gloves, stabbed Mr. Montgomery five times with a butcher knife. After killing Mr. Montgomery, appellant returned to the first floor, where Mrs. Montgomery was confined to bed, and stabbed her nine times. He then burglarized the residence. Appellant showed no remorse. Instead, he went to a bar and bought drinks with the stolen money. Subsequently, he and a friend returned to the Montgomerys' home to steal again.

Dr. Bertschinger, a forensic psychiatrist, testified for the state that appellant had symptoms of an antisocial personality disorder in that he chronically violated society's rules, with total disregard for the laws and the rights of others.

Dr. Bertschinger found no evidence of mental disease or defect. He knew of no record of any psychiatric hospitalizations, which would be expected if appellant had had a severe chronic mental illness like schizophrenia or a manic depressive disease. Dr. Bertschinger testified that for all intents and purposes there is no treatment available for appellant:

"These are engrained maladapted patterns of behavior that are very resistant to change, and there simply is not a very good track record of our ability to significantly alter this personality trait."

Appellant claimed to have been intoxicated at the time of the crimes. Dr. Bertschinger testified that it was significant that after the crimes appellant was able to recall the events with great detail and had planned the crimes several days in advance.

The defense psychologist, Dr. Newton Jackson, testified that appellant had an antisocial personality disorder, a history of alcohol and illicit drug abuse, some features of an anxiety disorder, and some defects in memory. According to Dr. Jackson, appellant was one of six children. The parents did not have good parenting skills. The children were disciplined by being locked in the bedroom. The father took a passive role in raising the children. In the first grade appellant was found to be "emotionally mentally retarded" with an I.Q. of 83. His antisocial behavior began soon thereafter at the age of six or seven. As an example, Dr. Jackson testified that appellant had urinated on the head of another child by climbing on top of a stall in a restroom. In the third grade he was placed in learning disability classes and he was also found

to be hyperactive. He would bully the children in class unless supervised by an adult. He also stole from a teacher. The teacher at the time felt that appellant had a poor ability to differentiate between right and wrong.

At the age of ten appellant became a full-time student in classes for the learning disabled and also at this age received permission from his parents to smoke cigarettes. When appellant was eleven, the family situation deteriorated. Appellant had failed all of his classes and two of the other children in the family tried to commit suicide, supposedly because of the beatings they received.

At the age of twelve appellant began to commit thefts on a regular basis. He started by stealing children's bikes and committing breakings and enterings. At thirteen his measured I.Q. was ten points below what it was in the first grade. At thirteen or fourteen he began to use marijuana and alcohol daily.

Dr. Jackson testified that by this age appellant clearly had symptoms of a conduct disorder that required immediate strong controls to prevent it from developing into an antisocial personality disorder. His juvenile record began at age fourteen and included complicity to commit burglary, curfew violation, unauthorized uses of motor vehicles, disorderly conduct, and criminal trespass. He was committed to the Department of Youth Services at age fourteen.

When he was sixteen he met his future wife, who was then fourteen. She became pregnant a few months later, after appellant's mother provided a place for them to have sex in her home.

In 1983, at age sixteen or seventeen, he admitted to a charge of breaking and entering. Later that same year he was again arrested for breaking and entering and was committed to Cuyahoga Hills Boys' School. Later that year he was expelled from another school for misbehavior.

That same year a new neighbor began organizing the neighborhood children in conducting breakings and enterings, and provided drugs to them. Appellant participated, and used various types of drugs including LSD and cocaine.

In November of that year appellant's son was born, developed spinal meningitis and became blind and brain-damaged.

At eighteen appellant committed other crimes and was married to the mother of his child. Shortly thereafter he was arrested for aggravated burglary and robbery. The next year he was convicted of purse snatching, and was sentenced to three to fifteen years' imprisonment at Mansfield Reformatory. This was the last crime before the present one.

Dr. Jackson concluded that appellant's personality disorder, which seriously compromised his ability to respond appropriately in social circumstances, substantially impaired his ability to conform his conduct to the law.

Since the terms "mental defect" and "mental disease" are not psychiatric terms, Dr. Bertschinger testified that it has been the generally accepted practice among forensic psychiatrists to equate "mental disease" with psychosis and "mental defect" with mental retardation. As a result, Dr. Bertschinger concluded that appellant had failed to establish the mitigation factor of R.C. 2929.04(B)(3) that, "at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law."

On the other hand, Dr. Jackson testified that an antisocial personality is a mental defect.

We have held that a behavior or personality disorder does not qualify as a mental disease or defect. *State v. Richey* (1992), 64 Ohio St.3d 353, 372, 595 N.E.2d 915, 930–931. Therefore the mitigating factor was not established.

Appellant was nineteen at the time of the murders. However, we find no mitigation because of appellant's youth. There is no question that appellant planned to burglarize and kill the victims. There is a degree of maturity in the planning and execution of the murders and burglaries that would be inconsistent with a finding that youth is a mitigating factor. We find that the aggravating circumstances have been proven beyond a reasonable doubt. Further we find that the mitigating factors do not outweigh the aggravating circumstances.

Finally, this court is required, pursuant to R.C. 2929.05(A), to consider whether the sentence imposed was excessive or disproportionate. We have upheld death penalties in other cases involving aggravated murders which involved the purposeful killing of or attempt to kill two or more persons, *e.g., State v. Frazier* (1991), 61 Ohio St.3d 247, 574 N.E.2d 483; *State v. Coleman* (1989), 45 Ohio St.3d 298, 544 N.E.2d 622; *State v. Sowell* (1988), 39 Ohio St.3d 322, 530 N.E.2d 1294; *State v. Brown* (1988), 38 Ohio St.3d 305, 528 N.E.2d 523; *State v. Brooks* (1986), 25 Ohio St.3d 144, 25 OBR 190, 495 N.E.2d 407; and cases where the aggravated murder was committed in the course of an aggravated burglary, *e.g., State v. Wiles* (1991), 59 Ohio St.3d 71, 571 N.E.2d 97; *State v. Holloway* (1988), 38 Ohio St.3d 239, 527 N.E.2d 831. Therefore, we find that the sentence of death in this case is not excessive or disproportionate.

Accordingly, we affirm appellant's convictions and death sentence. The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., A.W. SWEENEY, DOUGLAS, WRIGHT, F.E. SWEENEY and PFEIFER, JJ., concur.

WRIGHT, J., concurring. Why we see a continuing pattern of prosecutorial misconduct in capital cases is beyond me. There is simply no rational or just reason for prosecutors to overtry these cases. Trial tactics such as were used in this case are deplorable and reflect no credit on our criminal justice system.

Yet, I find that I must join the majority opinion, albeit reluctantly, because the evidence of Lorraine's guilt was so strong and the prosecutor's misconduct did not render the trial as a whole fundamentally unfair.

But, prosecutors be warned. This court is not averse to confronting misconduct and dealing with it appropriately. As outlined by this court in *State v. DePew* (1988), 38 Ohio St.3d 275, 528 N.E.2d 542, there are essentially two ways for us to respond to prosecutorial misconduct. The first is to vacate the conviction and/or sentence and remand for a new trial or resentencing. This was the result in *State v. Keenan* (1993), 66 Ohio St.3d 402, 613 N.E.2d 203, in which we concluded that the prosecutor's misconduct was so egregious that a fundamentally fair trial was impossible. In cases in which the prosecutor's behavior causes us to doubt that the conviction or sentence was based on the admissible evidence *alone*, we should not hesitate to order the case to be retried or the defendant resentenced. See, *e.g., State v. Thompson* (1987), 33 Ohio St.3d 1, 514 N.E.2d 407; *State v. Liberatore* (1982), 69 Ohio St.2d 583, 23 O.O.3d 489, 433 N.E.2d 561; *State v. Combs* (1991), 62 Ohio St.3d 278, 294, 581 N.E.2d 1071, 1084 (Wright, J., dissenting); *State v. Bedford* (1988), 39 Ohio St.3d 122, 134, 529 N.E.2d 913, 925 (Wright, J., dissenting); *State v. Beuke* (1988), 38 Ohio St.3d 29, 45, 526 N.E.2d 274, 291 (Wright, J., dissenting).

Our second option is to focus on the prosecutor's behavior under the Disciplinary Rules. In *DePew, supra,* the court observed that the rules prohibit attorneys from purposefully engaging in conduct that taints the fairness of the judicial process. We then announced the following policy:

"In order to preserve the fairness of trial proceedings and to deter further misconduct, it is henceforth the intention of this court to refer matters of misconduct to the Disciplinary Counsel in those cases where we find it necessary and proper to do so. We encourage all trial courts and appellate courts to take similar steps where appropriate." *Id.,* 38 Ohio St.3d at 289, 528 N.E.2d at 557.

I am sorely tempted to propose such a referral in this case. Just as we were willing to deal with the problem of misconduct in *Keenan* by remanding for a new trial, we should also be willing to deal with the problem through the use of the Disciplinary Counsel—even in those cases in which the misconduct amounts only to harmless error.

It is crucial that attorneys demonstrate a proper regard for the constitutional requirement that trials be fair. The right to a fair trial is a hallmark of our democracy and something of which we are rightly proud. It is reprehensible for prosecutors, as agents of our government, to disregard this essential right for any reason. Prosecutors can be assured that in the future I will encourage the court to use the Disciplinary Rules as a way to protect the integrity of the trial process.