DECISION AND JUDGMENT ENTRY
This consolidated appeal comes to us from the Lucas County Court of Common Pleas. It involves convictions, following a jury trial, on two counts of aggravated murder, one count of burglary and one count of carrying a concealed weapon. Because we conclude that the trial court acted within its discretion in refusing to grant a motion for severance, we affirm.
Appellant, Willie J. Carter, served as the "Grand Sheik" of a quasi-religious, but mostly criminal, organization known as the Blackstone Rangers. In 1996, the Blackstone Rangers consisted of approximately eighteen members who operated out of a Toledo house they called the "Temple."
On August 18, 1996, eleven prospective members were to be inducted into the Rangers. According to trial testimony, appellant had special plans for Destiny Elmore, one of the inductees. Appellant came to believe that Elmore told her boyfriend, Jeff "Jazzy" Grant, of appellant's participation in a robbery. Witnesses testified appellant intended to kill Destiny Elmore that night.
Appellant presided over the initiation ceremony. He administered the oath and inducted new members. He then announced that he would "interview" the inductees separately in the kitchen of the house: Destiny Elmore was first.
Appellant and two others accompanied Destiny Elmore into the kitchen. Those in the other room heard a struggle and Elmore screaming. At trial, one of the women testified that she saw appellant holding a belt around Elmore's neck. Another testified that when the noise stopped she saw Elmore's motionless body on the floor: her face blue, her eyes popping out. Three women testified that when it was over, appellant emerged from the kitchen warning the others that this was an example of what would happen to a Ranger who told others of gang business. Later, at the direction of appellant, several members of the gang disposed of Elmore's body near an urban overpass where police found it two days later.
The second murder of which appellant was accused began as a drug robbery. On December 3, 1996, Lamontie "Cheese" Gist enlisted the aid of Edward "Little E" King to take five pounds of marijuana from Roxanne Torres. The two did so, at gunpoint, in the basement of the "Temple."
At trial, Gist testified that appellant had been part of the initial plan to take Torres' drugs, but that the robbery was supposed to have taken place outside the Temple and performed by Gist alone. According to Gist, he tried to borrow Little E's gun, but King insisted that if his gun was to be used, he would participate in the theft. After the robbery, appellant, accompanied by other Rangers, found Gist and King. They took the marijuana and King's gun. King went to the Temple the next morning, possibly to retrieve his gun and get his share of the stolen marijuana.
Rashanna Torres, Roxanne's cousin, spent the night in the Temple. According to Rashanna Torres, when she awoke, she found appellant, King, and three Rangers in the living room. Rashanna Torres testified that she left the living room to prepare to go to work. When she returned forty-five minutes later, the living room was empty. She found appellant and the others in a basement lounge room. Appellant was sitting on a couch holding a belt around King's neck; King appeared dead. Police found his body that afternoon, dumped in an alley.
A few days after King's murder, police stopped a car in which appellant was riding and found a gun hidden behind the seat. Appellant claimed ownership. The gun was King's. Appellant was arrested and charged with carrying a concealed weapon.
Once the investigation turned to appellant and the Blackstone Rangers in connection with King's murder, the gang's code of silence began to dissolve. Several Rangers gave statements implicating appellant and five others in the murders of Destiny Elmore and Edward King. Appellant himself gave a statement confirming most of the details of the murders, but denying his involvement in them. Eventually, a Lucas County Grand Jury handed down indictments against all six. Appellant, in addition to the concealed weapons charge, was indicted for two counts of aggravated murder, burglary and conspiracy to commit aggravated murder.
Appellant entered a not guilty plea and moved to sever the individual counts of the indictment against him. He also requested separate trials for him and his codefendants. The court rejected severance of the counts but permitted appellant to be tried with only one codefendant, Phillip Gott. Following trial, a jury found appellant guilty on all counts. Gott was convicted of participating in the Edward King killing, but acquitted of the Destiny Elmore murder.
The court set aside the conspiracy conviction and sentenced appellant to terms of twenty years to life on the aggravated murder counts, four years on the burglary conviction, and a year on the concealed weapon charge: all to be served consecutive to each other.
Appellant now brings this appeal, setting forth the following two assignments of error:
 "I. WHETHER DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND THE CONSTITUTION OF THE STATE OF OHIO.
 "II. WHETHER THE TRIAL COURT ERRED BY ITS FAILURE TO SERVER THE DEFENDANTS."
 I.
In his first assignment of error, appellate counsel raises the issue of ineffective assistance of trial counsel. However, in his analysis of the trial pursuant to the standards enunciated in Strickland v. Washington (1984), 466 U.S. 668, counsel concludes that appellant was not denied the effective assistance of counsel at trial. Counsel then submits the issue pursuant to Anders v. California (1967), 386 U.S. 738.
An Anders brief requires a conclusion that no meritorious grounds for appeal exist. Since appellant's counsel argues the merits of his second assignment of error, he has found at least one arguable issue and the submission pursuant to Anders
is inappropriate. Notwithstanding this, appellate counsel's analysis and our own review of the record shows that appellant was not denied effective assistance of counsel. Accordingly, appellant's first assignment of error is not well-taken.
 II.
In his second assignment of error, appellant, citing Federal Criminal Procedure Rule 14 and exclusively relying on federal case law, argues that the trial court erred in denying his motion to sever.
Crim.R. 8 permits the joinder of offenses in separate counts, if the offenses are,
 "* * * of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Crim.R. 8(A)
Defendants may be joined,
 "* * * if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses, or in the same course of criminal conduct. Such defendants may be charged in one or more counts together or separately, and all of the defendants need not be charged in each count." Crim.R. 8(B)
Joinder is favored because it conserves judicial resources and minimizes the possibility of incongruous results. State v. Schiebel
(1990), 55 Ohio St.3d 71, 86-87, quoting State v. Hamblin (1988),37 Ohio St.3d 153, 157-158.
The decision of whether or not to sever properly joined offenses or defendants rests in the sound discretion of the court,Id.; State v. Torres (1981), 66 Ohio St.2d 340, syllabus; State v.Lott (1991), 51 Ohio St.3d 160, 163, and will not be reversed absent an abuse of discretion. Id. An abuse of discretion is more than an error of law or of judgment, the term connotes that the court's attitude is arbitrary, unreasonable or unconscionable.State v. Adams (1980), 62 Ohio St.2d 151, 157.
Guidance for joinder questions is provided by Crim.R. 14 which directs that a motion for severance be granted if the defendant is prejudiced by such joinder. The defendant has the burden of showing affirmatively that joinder prejudices his or her rights and must, at the time of requesting severance, come forth with information sufficient for the court to properly weigh the considerations favoring joinder with the defendant's right to a fair trial. State v. Torres, supra; State v. Lott at 163, Statev. Lorraine (1993), 66 Ohio St.3d 414, 425.
In this matter, appellant claims that he was prejudiced, "* * * in the form of guilt by association, and the inability of the jury to distinguish between the transactions involving [he and his codefendant.]" These bare assertions are simply insufficient to show prejudice. Appellant fails to direct us to a single piece of evidence unfairly admitted. Moreover, as to the ability of the jury to distinguish between appellant and his codefendant, the assertion rings hollow given the fact that the jury convicted appellant of all counts and acquitted his codefendant in one of the two counts against him. Consequently, both retrospectively and prospectively, the trial court acted within its discretion when it denied appellant's motion to sever.
Accordingly, appellant's second assignment of error is not well-taken.
Upon consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Costs to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
RESNICK, J., SHERCK, J., KNEPPER, P.J., CONCUR.