JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Anthony Weaver, appeals from the judgment of the Cuyahoga County Common Pleas Court, rendered after a jury trial, finding him guilty of drug possession, drug trafficking, drug trafficking with a juvenile specification, and possession of criminal tools.
 {¶ 2} In August 2002, the Cuyahoga County Grand Jury indicted appellant on one count of possession of drugs, in an amount equal to ten grams but less than 25 grams, in violation of R.C.2925.11; two counts of drug trafficking, in an amount equal to ten grams but less than 25 grams, both with a juvenile specification, in violation of R.C. 2925.03/2925.01(B); one count of possession of drugs in an amount less than five grams, in violation of R.C. 2925.11; and one count of possession of criminal tools, in violation of R.C. 2923.24.
 {¶ 3} The State subsequently amended counts one and two to reflect possession of crack cocaine in an amount equal to one gram but less than five grams and dismissed count four of the indictment. In addition, the trial court dismissed the juvenile specification in count three (drug trafficking) pursuant to appellant's Crim.R. 29 motion.
 {¶ 4} At trial, Detective Jeffrey Cook testified that in July 2002, the S.E.A.L.E. Narcotics Task Force, which is comprised of police officers from seven southeast area Cleveland suburbs, set up a buy/bust operation in an attempt to arrest suspected drug dealers. The operation utilized a female confidential reliable informant ("CRI") who telephoned several suspected drug dealers and asked them to deliver drugs to her at the Red Roof Inn, located at I-271 and Rockside Road in Bedford Heights. The police tape-recorded the CRI's telephone calls to the drug dealers and set up audio and videotape surveillance of the CRI's room from an adjoining room at the Red Roof Inn.
 {¶ 5} Detective Cook testified that the buy/bust operation was the culmination of a year-long investigation into various suspected drug dealers. Cook testified that on July 25, 2002, the CRI called a suspected drug house and asked for a person named Cleo. The child who answered the phone told the CRI that Cleo lived across the street. Eventually a woman came on the line and informed the CRI that Cleo had just left, but "TW across the street could make it happen." According to Cook, when TW got on the phone, the CRI ordered $500, or as close to half an ounce of crack cocaine as possible, and TW responded, "No problem." TW told the CRI that he could get a ride to the Red Roof Inn and told her to call back in ten minutes. When the CRI called back, a woman answered the phone and told the CRI that "Tony is pulling out of the driveway now."
 {¶ 6} Cook testified that there was a knock on the door of the CRI's room at the Red Roof Inn shortly thereafter. The CRI opened the door and appellant and a male subsequently identified as David Bogan walked into the room. When the CRI asked, "What do you have for me," Bogan handed a package of crack cocaine to the CRI. The CRI then asked, "How much is it?" and Bogan responded, "It's 14 grams." When she asked the men if they were sure, appellant responded, "Yes, it's all sufficient."
 {¶ 7} When the CRI began counting out the money (a pre-arranged signal to the police that the drugs had been delivered, several police officers entered the room and arrested appellant and Bogan. Upon searching appellant after his arrest, Cook found a pipe containing crack residue and an envelope with directions to the Red Roof Inn written on it in appellant's pocket.
 {¶ 8} Detective Allen Henderson testified that he assisted the S.E.A.L.E. Narcotics Task Force with the buy/bust operation on July 25, 2002 by monitoring the number and location of the suspects in the CRI's room via the surveillance equipment. During Henderson's testimony, the prosecutor played the videotape of the buy/bust at the Red Roof Inn. Henderson identified the two individuals on the videotape who entered the CRI's room as appellant and David Bogan.
 {¶ 9} During the testimony of the State's final witness, Detective James Mendolera, the prosecutor played the audiotape of the CRI's telephone calls to "Cleo's" house. Mendolera testified that as a result of the year-long investigation, the officers knew that "Cleo" lived in a house from which drugs were being sold. According to Mendolera, when the CRI called Cleo's house on July 25, 2002, she initially spoke with a woman named Gloria Towns, who called Tony from across the street to come to the phone. When the CRI called back ten minutes after her initial conversation with Tony, Gloria told the CRI that Tony had left and then asked the CRI for $5 as payment for setting up the deal. Mendolera testified that he gathered from this request that Tony lived across the street from Gloria and she was letting him use her telephone to set up the drug deal. Mendolera also testified that Tony's statement to the CRI during the telephone conversation that "Everything is all good" meant that Tony had the drugs to deliver. Mendolera testified further that when Bogan handed the drugs to the CRI at the Red Roof Inn, he told her that it was 14 grams of crack cocaine and appellant stated, "I told you it would be sufficient."
 {¶ 10} Finally, Mendolera testified that when the CRI requested delivery of the drugs to her at the Red Roof Inn during her telephone conversation with Tony, Tony stated, "Let me go get a pencil," and the CRI then gave him directions to the Red Roof Inn. Mendolera testified that after arresting appellant, the officers discovered an envelope with the words "Red Roof 271 to 480 Rockside Road" written in pencil on it in appellant's pocket.
 {¶ 11} The jury subsequently convicted appellant of one count of drug possession, one count of drug trafficking with a juvenile specification, one count of drug trafficking, and possession of criminal tools. The trial court sentenced appellant to twelve months incarceration on the drug possession offense; four years incarceration on the drug trafficking with juvenile specification offense; six months incarceration on the drug trafficking offense; and six months incarceration on the possession of criminal tools offense, the sentences to be served concurrently. The trial court also found appellant to be a probation violator in Case No. CR-413906 and sentenced him to 17 months incarceration, to be served consecutive to the total prison term of four years imposed in this case.
 {¶ 12} Appellant timely appealed and has raised four assignments of error for our review.
 JUVENILE SPECIFICATION IN DRUG TRAFFICKING COUNT {¶ 13} In his first assignment of error, appellant contends that there was insufficient evidence to support his conviction on the juvenile specification contained in count two. We agree.
 {¶ 14} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus.
 {¶ 15} R.C. 2925.03 provides that:
 {¶ 16} "(A) No person shall knowingly * * *:
 {¶ 17} "(1) Sell or offer to sell a controlled substance;
 {¶ 18} "(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person."
 {¶ 19} "* * *
 {¶ 20} "(C) Whoever violates division (A) of this section is guilty of one of the following:
 {¶ 21} "* * *
 {¶ 22} "(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of trafficking in cocaine. The penalty for the offense shall be determined as follows:
 {¶ 23} "* * *
 {¶ 24} "(c) * * * if the amount of the drug involved * * * equals or exceeds one gram but is less than five grams of crack cocaine, trafficking in cocaine is a felony of the fourth degree, and there is a presumption for a prison term for the offense. If the amount of the drug involved is within one of those ranges and if the offense was committed in the vicinity of a school or in the vicinity of a juvenile, trafficking in cocaine is a felony of the third degree, and there is a presumption for a prison term for the offense."
 {¶ 25} Thus, the juvenile specification increases the degree of the crime committed and the attendant penalty. State v.Hassan (May 17, 2001), Cuyahoga App. No. 77946. "It must therefore be proved by the state beyond a reasonable doubt." Id., citing State v. Allen (1987), 29 Ohio St.3d 53, syllabus.
 {¶ 26} Here, it is readily apparent that the State did not present sufficient evidence regarding the juvenile specification. Two witnesses testified at trial regarding the alleged juvenile. In response to the prosecutor's question regarding how many suspects were involved in appellant's arrest, Detective Henderson stated,
 {¶ 27} "There were two suspects that entered the room and we later learned additionally that there was a younger juvenile in the car, waiting in the parking lot."
 {¶ 28} Later in trial, Detective Mendolera testified that a short time after the CRI's telephone conversation with Gloria, the police learned via a radio transmission from two surveillance officers that the suspects had arrived at the Red Roof Inn. According to Mendolera,
 {¶ 29} "The surveillance officers, Sergeant Leonardi and Detective Harry Edwards, advised us that the suspects arrived in a green vehicle with three occupants; that two occupants had entered the Red Roof Inn; and that one occupant, which was a 16-year-old juvenile, David Bogan's brother, was left in the car."
 {¶ 30} This testimony is clearly insufficient to prove beyond a reasonable doubt that the drug trafficking offense was committed in the vicinity of a juvenile. Both Henderson and Mendolera testified that they learned about the alleged juvenile from someone else; neither testified that they had actually seen the juvenile or had any personal knowledge about him or his age. The prosecutor put forth no other evidence, however, to verify or substantiate the officers' hearsay testimony regarding the juvenile.
 {¶ 31} The State argues that the jury could have found this element of the crime proven beyond a reasonable doubt because "the source of this information were members of the investigation team working on the buy/bust" and the "buy/bust was the culmination of a year-long investigation" that targeted several suspected drug dealers. The State's argument is specious: how long the investigation took and who was involved in it are not relevant to determining whether the offense took place in the vicinity of a juvenile.
 {¶ 32} Appellant's first assignment of error is sustained. Because the evidence was insufficient to support his conviction on the "juvenile specification" contained in count two, appellant's conviction for drug trafficking is modified to a fourth degree felony and the matter is remanded for resentencing.
 HEARSAY {¶ 33} In his second assignment of error, appellant contends that he was denied his right to a fair trial because the trial judge erred in admitting hearsay testimony. Appellant argues that the testimony of Detectives Henderson and Mendolera regarding the juvenile specification and the audio and video surveillance tapes of the buy/bust operation that were played for the jury were inadmissible and prejudicial hearsay that affected his right to a fair trial.
 {¶ 34} Appellant's argument regarding the testimony of Detectives Henderson and Mendolera is moot. We have already determined that Henderson's and Mendolera's hearsay testimony regarding the juvenile was insufficient to support appellant's conviction on the juvenile specification contained in count two.
 {¶ 35} With respect to the audio and videotapes, we note that appellant failed to raise this issue in the court below and, therefore, waived the the opportunity to raise it here. State v.Cooley (2001), 93 Ohio St.3d 253, 271; State v. Lorraine
(1993), 66 Ohio St.3d 414.
 {¶ 36} Appellant's second assignment of error is therefore overruled.
 CONSECUTIVE SENTENCES {¶ 37} The record reflects that upon sentencing appellant, the trial court stated:
 {¶ 38} "Well, 413906 you are a probation violator. In fact, the capias was issued on June 7th of this year. The presentence investigation report reveals an extremely long history of both drug possession and drug dealing, as well as other felony offenses. You have been to prison under 10 separate case numbers. I don't know what I was thinking when I gave you probation in the first instance, I really don't. So that probation is terminated. You're going to get 17 months on that case. It was a felony of the fourth degree. By law that has to run consecutive to the sentence I'll impose on this case.
 {¶ 39} "Count 1 I'm going to give you 12 months, on Count 2 I'm going to give you four years, Count 5, six months — strike that — Count 3, six months, Count 5, six months. Those will run concurrent to each other."
 {¶ 40} In his third assignment of error, appellant contends that the trial court erred in sentencing him to consecutive sentences because, contrary to the trial court's statement, Senate Bill 2 eliminated any requirement that incarceration due to a probation violation must be served consecutively to incarceration imposed for a new case. Appellant further contends that in imposing consecutive sentences, the trial court did not comply with the sentencing mandates of R.C. 2929.14(E)(4). We agree.
 {¶ 41} R.C. 2929.14(E)(4) governs the imposition of consecutive sentences. It provides that a court may impose consecutive sentences only when it concludes that the sentence is: (1) necessary to protect the public from future crime or to punish the offnder; (2) not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) one of the following applies: a) the offender committed the offenses while awaiting trial or sentencing, under sanction or under post-release control; b) the harm caused by the multiple offenses was so great or unusual that a single prison term would not adequately reflect the seriousness of his offense; or c) the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime.
 {¶ 42} Moreover, R.C. 2929.19(B)(2) provides that:
 {¶ 43} "The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
 {¶ 44} "* * *
 {¶ 45} "(c) If it imposes consecutive sentences under section2929.12 of the Revised Code, its reasons for imposing the consecutive sentences."
 {¶ 46} Thus, R.C. 2929.14(E)(4) requires the trial court to make at least three findings prior to sentencing an offender to consecutive sentences and, pursuant to R.C. 2929.19(B)(2)(c), to give the reasons behind its findings. Failure to sufficiently state these reasons on the record constitutes reversible error.State v. Gary (2001), 141 Ohio App.3d 194, 196-198, citingState v. Albert (1997), 124 Ohio App.3d 225.
 {¶ 47} Here, the trial court did not make the necessary statutory findings to impose consecutive sentences. It made no findings that consecutive sentences 1) were necessary to protect the public and not disproportionate to the seriousness of appellant's conduct or that 2) the offenses were committed while appellant was awaiting trial or sentencing, the harm caused by the offenses was so great that a single prison term would not adequately reflect the seriousness of appellant's conduct or appellant's criminal history demonstrated that consecutive sentences were necessary to protect the public.
 {¶ 48} Although the trial court noted that appellant had been to prison under ten separate case numbers and had an extensive criminal history, it did not explain, as required by R.C.2929.19(B)(2), how these factors related to the statutory findings required by R.C. 2929.14(E). References to a defendant's criminal record, the seriousness of his offenses, his likelihood of recidivism, etc., without explaining how those factors relate to or impact the specific findings required by R.C. 2929.14(E)(4) are not sufficient to satisfy the requirements of R.C.2929.19(B)(2). State v. Fort, Cuyahoga App. No. 80604, 2002-Ohio-5068, at ¶ 88, citing State v. Givner (July 5, 2001), Cuyahoga App. No. 78625.
 {¶ 49} Appellant's third assignment of error is sustained.
 MANIFEST WEIGHT OF THE EVIDENCE {¶ 50} In his fourth assignment of error, appellant contends that his convictions for trafficking in cocaine were against the manifest weight of the evidence.
 {¶ 51} While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. State v.Thompkins (1997), 78 Ohio St.3d 380, 390. When a defendant asserts that his conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v.Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 52} Here, the evidence from which the jury concluded that appellant was guilty of trafficking in drugs was uncontroverted. Detective Mendolera testified that in a telephone conversation on July 25, 2002, the CRI spoke with a male known as "TW" or "Tony" and ordered a half-ounce of crack cocaine from him. He testified further that in this same telephone conversation, Tony agreed to deliver the cocaine to the CRI at the Red Roof Inn and the CRI gave Tony directions to the hotel. Detective Henderson identified appellant as one of the two men who entered the CRI's room at the Red Roof Inn and handed her a package of crack cocaine. Mendolera also testified that when Bogan told the CRI that the package contained 14 grams of crack cocaine, appellant stated, "I told you it would be sufficient." Finally, Mendolera testified that when the officers arrested appellant in the CRI's room, appellant had an envelope with directions to the Red Roof Inn written on it in his pocket.
 {¶ 53} After reviewing the entire record, weighing the evidence and considering the credibility of the witnesses, we are not persuaded that the jury lost its way and created such a miscarriage of justice that appellant's conviction for drug trafficking must be reversed. Rather, the record reveals substantial evidence from which the jury could have concluded, beyond a reasonable doubt, that appellant offered to sell, transported and then sold crack cocaine to the CRI.
 {¶ 54} Appellant's fourth assignment of error is overruled.
 {¶ 55} Reversed in part and remanded for resentencing.
 {¶ 56} This cause is remanded for further proceedings consistent with the opinion herein.
Patricia A. Blackmon, P.J., and Diane Karpinski, J., concur.
It is, therefore, ordered that appellant recover from appellee costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.