{¶ 43} I respectfully dissent. I would conclude that a new trial is warranted due to the introduction of improper other acts evidence (including evidence of poor living conditions, inappropriate chores, harsh discipline, thefts from neighbors and relatives, and drug use), and victim impact evidence (including the girls' foster care histories, and claims that they cut themselves due to this abuse). I would find this evidence to be prejudicial in and of itself, and in light of the lack of specificity establishing the twelve individual offenses of which defendant was convicted.
 {¶ 44} The younger girl (born in 1990) testified that when she and her older sister got home from school, defendant would instruct one to go in the garage and the other to wait outside. The girl testified that defendant raped and molested her in the garage and was "always touching" her vaginal area with his fingers and mouth, and was "always doing it." (Tr. 193). She did not remember how many times and stated that "He did it so much, I don't even remember." (Tr. 198)
 {¶ 45} She stated that defendant took his clothes off at these times and once tried to put his private part into her mouth. He threatened to hurt or kill her if she told anyone.
 {¶ 46} Although she indicated on direct questioning that defendant did not put his private part in her, she stated that she reported to Det. McPike that defendant had put his penis inside her and that it hurt.
 {¶ 47} The younger girl also testified that she started cutting herself as a "way to get away from the pain of the abuse for awhile." (Tr. 199) She ultimately left this home because of abuse and now resides at Bellfaire because she "needed treatment for anger and to get over the rape." (Tr. 184-185)
 {¶ 48} The older girl, (born in 1989) testified that after school, the girls had to do chores, including mowing the lawn, cleaning up after the dogs, dumping and cleaning the bucket that the family used as a bathroom in the garage, and cleaning the grandfather's house. Defendant would then find a reason for her to be in trouble. In these instances, he would send the other girls out of the garage and molest this girl.
 {¶ 49} According to the girl, defendant spanked her and began "rubbing * * * butt" and this was "all that [she could] remember." (Tr. 273).
 {¶ 50} In another instance, he followed her into the house as she was changing, asked her how wild she was, and began to rub her genitals. She further stated that he did not penetrate her, but he rubbed her vaginal area, under her clothing, more than five times. In addition, he touched her breasts approximately ten times.
 {¶ 51} The girl also testified that he would make her rub his genitals, and rubbed his genitals against her butt. She frequently cried and he threatened that he would make her suck his genitals if she did not stop crying.
 {¶ 52} She also testified that she has cut herself because of what happened to her while living on Sackett Avenue.
 {¶ 53} Defendant was convicted of nine counts of gross sexual imposition upon the younger girl, and three counts of gross sexual imposition upon the older girl.
 {¶ 54} Within his third assignment of error, defendant provides a list, nearly two pages long of other acts evidence which he claims prejudiced the outcome of this trial.
 {¶ 55} Evid.R. 404(B) provides that evidence of other acts is not admissible to prove the character of a person in order to show that the accused acted in conformity therewith. See, e.g.,State v. Curry (1975), 43 Ohio St.2d 66, 68-69, 330 N.E.2d 720.
 {¶ 56} "While `other acts' evidence may not be used to prove criminal propensity, such evidence may be admissible `if (1) there is substantial proof that the alleged other acts were committed by the defendant, and (2) the evidence tends to prove notice, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" State v. Lowe,69 Ohio St.3d 527, 530, 1994-Ohio-345, 634 N.E.2d 616; see, also, Evid.R. 404(B); R.C. 2945.59.
 {¶ 57} Generally, "an accused cannot be convicted of one crime by proving he committed other crimes or is a bad person."State v. Jamison (1990), 49 Ohio St.3d 182, 552 N.E.2d 180. Consequently, "evidence of other crimes, wrongs or bad acts independent of, and unrelated to, the offenses for which a defendant is on trial is generally inadmissible to show criminal propensity." Id.
 {¶ 58} "The purpose behind this rule is to prevent an accused from being placed in the unenviable position of having to defend him or herself for two distinct offenses at trial: those crimes which the accused is currently on trial for, and additional illegal activity that the accused allegedly committed in the past." State v. Kanetsky (June 11, 1999), Trumbull App. No. 97-T-0162.
 {¶ 59} Moreover, "a criminal conviction cannot be based, in whole or in part, upon the `bad character of the defendant theory.'" State v. Pollard (April 13, 2001), Ashtabula App. No. 99-A-0072.
 {¶ 60} Due to the "possible prejudicial effect that extrinsic acts evidence may have in the minds of the trier of fact, Evid.R. 404(B) and R.C. 2945.59 must be strictly construed against admissibility." State v. Swick (December 21, 2001), Lake App. No. 97-L-254.
 {¶ 61} In this matter, a tremendous volume of "other acts" testimony was admitted in this matter, including, as noted by the defense, that defendant did not work and lounged all day, evidence of stealing from the neighbors and the grandfather, drug use, poor living conditions, age-inappropriate chores, poor parenting, and extremely harsh discipline.
 {¶ 62} Clearly, the evidence pertaining to discipline, and required chores which were associated with discipline or opportunities to deal with the girls privately is relevant to defendant's opportunity, preparation or plan. However, in my view, there is not a sufficient nexus to justify the remainder of the tremendous volume of this other acts evidence in this matter. I would also conclude that this evidence was prejudicial to the outcome of defendant's trial, as there was little specificity to establish distinct offenses, at least in relation to the charges involving the younger girl. It therefore appears that the convictions were based upon the "bad character of the defendant" rather than upon evidence of his offenses. Indeed, as this court noted in State v. Hemphill, Cuyahoga App. No. 85431,2005-Ohio-3726, "individual offenses must be established with some degree of distinction."
 {¶ 63} This court explained:
 {¶ 64} "With regard to specific instances, [the victim] testified that the conduct occurred in defendant's bedroom after he had sent the other children outside to clean the van. She briefly mentioned reporting to others of incidents when defendant fell on her then had sex with her and she testified to another incident after her baptism which occurred when she slept in the basement.
 {¶ 65} "The state also presented evidence that defendant would rub her chest "any chance he got" (Tr. 214), and put his mouth on her private part at least twice. Penetration was not established, however. State v. Falkenstein, Cuyahoga App. No. 83316, 2004-Ohio-2561 at *7; State v. Blankenship (Dec. 13, 2001), Cuyahoga App. 77900, 2001 Ohio App. LEXIS 5520.
 {¶ 66} "Apart from the foregoing, no additional evidence was offered as to actual numbers or specific incidents. * * *
 {¶ 67} "Accordingly, defendant's conviction for one count of gross sexual imposition, one count of rape of a girl under thirteen with the furthermore clause alleging force, and one count of rape with the furthermore clause alleging force, are all supported by sufficient evidence. We hereby vacate defendant's convictions for the remaining offenses."
 {¶ 68} In this matter, I would conclude that the evidence was not sufficient to establish twelve separate incidents connecting to the twelve separate offenses of which defendant was convicted. The younger girl testified that defendant raped and molested her in the garage and was "always touching" her vaginal area with his fingers and mouth, and was "always doing it." (Tr. 193). She did not remember how many times and stated that "He did it so much, I don't even remember." (Tr. 198). The older girl testified that defendant rubbed her under her clothing, more than five times, touched her breasts approximately ten times, made her rub his genitals, and rubbed his genitals against her butt. As to specific instances, she stated that defendant spanked her and began "rubbing * * * butt" but this was "all that [she could] remember." (Tr. 273) He also once followed her into the house as she was changing, asked her how wild she was, and began to rub her genitals.
 {¶ 69} I am troubled by the lack of specificity as to the offenses for which defendant was convicted.
 {¶ 70} I would also note that extensive improper victim impact evidence was presented. "Victim impact evidence is excluded because it is irrelevant and immaterial to the guilt or innocence of the accused — it principally serves to inflame the passion of the jury." State v. Loyed, Cuyahoga App. No. 83075,2004-Ohio-3961.
 {¶ 71} In other words, evidence of the consequences of a crime on the victim's family do nothing to prove whether the offense had been committed — it chiefly serves as a distraction for the trier of fact. Id.
 {¶ 72} Here, both girls testified that they cut themselves due to "the abuse" and "because of what happened" while they lived on Sacket Avenue. Even assuming that the girls are competent to connect the cutting to this particular matter, as opposed to the allegations of abuse from their biological father, being separated from their mother, having been in various foster homes, or any of the other events of their lives, this evidence was simply inflammatory and not illustrative of the nature and circumstances of the crimes. Cf. State v. Lorraine (1993),66 Ohio St.3d 414, 420, 613 N.E.2d 212. Likewise, extensive evidence was presented concerning the girls' numerous foster care placements following the reporting of these offenses.
 {¶ 73} In accordance with all of the foregoing, I would conclude that prejudicial error tainted the outcome of this matter and I would reverse and remand for a new trial.