JOURNAL ENTRY AND OPINION *Page 4 
{¶ 1} Defendant Myron Priest appeals from his convictions for rape, aggravated robbery, felonious assault, kidnapping, having a weapon under disability, and the determination that he is a sexual predator. For the reasons set forth below, we reverse the conviction for having a weapon under disability and remand for further proceedings as to this offense, and affirm the convictions in all other respects.
 {¶ 2} On June 7, 2006, defendant was indicted pursuant to a seventeen count indictment in connection with alleged sexual assaults on three women on April 10, 2006. Counts One through Six charged defendant with two counts of rape with sexually violent predator specifications as to each of the three women, A.C., M.G., and B.S. Counts Seven through Twelve charged defendant with two counts of aggravated robbery as to each woman. Count Thirteen charged defendant with one count of felonious assault as to A.C. Counts Fourteen through Sixteen charged defendant with one count of kidnapping as to each woman. Counts Thirteen through Sixteen also set forth sexually violent predator specifications and sexual motivation specifications. Count Seventeen charged him with having a weapon while under disability.
 {¶ 3} Defendant pled not guilty and also moved to suppress statements which he made at the time of booking. Following a hearing, the trial court denied the motion to suppress, and the matter proceeded to a jury trial on September 29, 2006. *Page 5 
 {¶ 4} The state's evidence demonstrated that A.C. dated Deontay Schaefer, M.G. dated Russell Flowers and B.S. dated Levon Edgeston. The women frequently drove to East Cleveland to visit the men. On April 10, 2006, A.C. drove the women to Deontay Schaefer's home in East Cleveland. Flowers and Edgeston were also there. As the women sat in their car, Brandon Wheat, whom the women knew, approached with defendant.
 {¶ 5} Defendant asked the women for a ride to the store. A.C. indicated that she would take him but she needed gas money. The women left Schaefer's home at approximately 9:30 p.m. Defendant asked to be taken to a home on Shaw Avenue in East Cleveland. He exited the car, and knocked on the door but no one answered. He then returned to the car and produced a silver handgun and told A.C. to pull into a nearby driveway and to give him the car keys. A.C. refused, and defendant pulled B.S. out of the car and threatened to shoot B.S. A.C. then gave the keys to defendant.
 {¶ 6} Defendant forced the women to go to the back of the house. He instructed them to be quiet and struck them in the head with the weapon if they spoke. He showed them that the weapon was loaded and instructed the women to remove their pants and bend over. He raped M.G, who was then pregnant, A.C, and B.S. He also made the women lick his penis. During the assaults, defendant struck A.C. in the head with the gun. *Page 6 
 {¶ 7} When they returned to the car, defendant took M.G.'s cell phone and removed part of the CD player from the car. He then took B.S. to the side of the house and raped her vaginally and anally. When they returned to the car, defendant indicated that he wanted the car, and A.C. sprayed him in the eyes with perfume and dumped the bottle on his head. As A.C. struggled with defendant, he pushed her to the ground and hit her, but then ran off. A.C. ripped a section of defendant's jacket off as he fled and a cell phone fell from the pocket. The women called police and were instructed to wait at the firehouse across the street.
 {¶ 8} Defendant was subsequently arrested and denied any involvement with the offenses. Vaginal and rectal swabs taken from A.C. were positive for semen, and her underwear also tested positive for semen. DNA analysis of the swabs contained a mixture of A.C.'s and M.G.'s DNA, indicating that they had sex with the same individual in a short period of time. Vaginal swabs from B.S. contained a sperm profile consistent with defendant and the expected frequency of such profile is 1: 120,600,000,000,000,000,000.
 {¶ 9} The trial court granted a judgment of acquittal as to Counts Eleven and Twelve, charges of aggravated robbery. The matter was then submitted to the jury and defendant was convicted of the rape counts and the firearm specifications, Count Seven and Nine and their specifications and Counts Thirteen through Sixteen and their specifications. In addition, the trial court convicted defendant of having a weapon while under disability. *Page 7 
 {¶ 10} On November 20, 2006, the trial court held a hearing on the sexually violent predator specifications and determined that the specifications were not established. The court then conducted a sexual predator hearing and determined that defendant is a sexual predator. He was later sentenced to a total of thirty-three years of imprisonment. Defendant now appeals and assigns seven errors for our review.
 {¶ 11} Defendant's first assignment of error states:
 {¶ 12} "The trial court lacked jurisdiction to try Appellant without a jury on the weapon while under disability charge because no jury waiver was signed by Appellant."
 {¶ 13} Crim. R. 23(A) provides:
 {¶ 14} "In serious offense cases the defendant, before commencement of the trial, may knowingly, intelligently and voluntarily waive in writing his right to trial by jury. Such waiver may also be made during trial with the approval of the court and the consent of the prosecuting attorney. * * *"
 {¶ 15} R.C. 2945.05 provides:
 {¶ 16} "In all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be tried by the court without a jury.
 {¶ 17} Such waiver by a defendant, shall be in writing, signed by the defendant, and
 {¶ 18} filed in said cause and made a part of the record thereof. * * *" *Page 8 
 {¶ 19} Where the trial court bifurcates a charge of having a weapon while under disability from the remaining counts in the indictment but the defendant does not execute a written waiver of a jury trial as to this offense, there is a failure to comply with R.C. 2945.05. State v.Hamilton, Cuyahoga App. No. 86520, 2006-Ohio-1949.
 {¶ 20} In this matter, defendant indicated that he would waive a jury as to the charge of having a weapon while under disability. No waiver was executed. The state concedes the error. Accordingly, we vacate defendant's conviction for having a weapon while under disability and remand the matter for retrial as to this offense.
 {¶ 21} Defendant's second assignment of error states:
 {¶ 22} "The trial court erred when it overruled Appellant's motion to suppress his oral inculpatory statement in violation of his rights against self-incrimination."
 {¶ 23} Within this assignment of error, defendant complains that statements he made during processing pursuant to his arrest should have been suppressed.
 {¶ 24} As an initial matter, we note that on review, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Harris (1994),98 Ohio App.3d 543, 546, 649 N.E.2d 7. After accepting such factual findings, the reviewing court must independently determine as a matter of law whether the applicable legal standard has been satisfied.State v. Lloyd (1998), 126 Ohio App.3d 95, 709 N.E.2d 913.
 {¶ 25} We further note that in Miranda v. Arizona (1966),384 U.S. 436, *Page 9 
478-479, 86 S.Ct. 1602, 16 L.Ed.2d 694, the Supreme Court held that a defendant who is subjected to custodial interrogation must be advised of his or her constitutional rights and make a knowing and intelligent waiver of those rights before statements obtained during the interrogation will be admissible. The Court cautioned, however, thatMiranda does not affect the admissibility of "volunteered statements of any kind." 384 U.S. at 478, 86 S.Ct. at 1630, 16 L.Ed.2d at 726. See, also, State v. McGuire (1997), 80 Ohio St.3d 390, 401, 1997-Ohio-335,686 N.E.2d 1112 (Statements given before questioning has begun must be considered voluntarily given and not made during a "custodial interrogation."); State v. Jones, 90 Ohio St. 3d 403, 2000-Ohio-187.
 {¶ 26} In State v. Jones, 90 Ohio St.3d 403, 2000-Ohio-187,739 N.E.2d 300, the defendant was arrested and booked at the police station. At this time, he was shown a copy of the indictment and told he was under arrest for the murder of the victim and burglary and robbery in connection with the theft of her necklace. The booking officer showed defendant a photo of the necklace and defendant stated that he had never seen it before in his life. The officer told defendant that the necklace was in the trunk of his car and defendant then denied it had been in his car. In determining that the trial court properly denied defendant's motion to suppress these statements, the Supreme Court held that the statements were not the result of a police interrogation and not elicited in violation of his constitutional rights, but were voluntary. *Page 10 
 {¶ 27} Similarly, in State v. Andrews, Allen App. No. 1-05-70,2006-Ohio-3764, the defendant demanded to know what he was being interviewed about upon his arrival at the police department. The officers explained that a private citizen had reported that defendant had robbed him. Defendant then indicated that he did not rob people, he robbed businesses. Miranda warnings were given immediately after the statement was made and prior to any questioning. In affirming the denial of a motion to suppress, the court noted that the police had not asked defendant any questions but had simply given the reason for the interview in response to defendant's question. The court then held that the statement was made prior to the start of any "interrogation" and was voluntarily given.
 {¶ 28} In this matter, East Cleveland police detective Henry McCurdy testified that he did not discuss the case with defendant and defendant made no statement prior to signing a Miranda waiver. In opposition, defendant stated that, during fingerprinting, and prior to his signing of the Miranda waiver, he asked Det. McCurdy why he was being arrested and then made a statement to McCurdy. The trial court denied the motion following the hearing.
 {¶ 29} In accordance with all of the foregoing, we conclude that insofar as the trial court may have determined that all discussion occurred subsequent to defendant's waiver of his rights, we would conclude that such determination is supported by competent, credible evidence. Alternatively, insofar as the trial court may have credited defendant's version of events, i.e., that during fingerprinting, he *Page 11 
asked Det. McCurdy why he had been arrested, then told McCurdy, "I didn't rape and rob nobody," such statement was not made in response to police questioning, and was not compelled by police in any manner.
 {¶ 30} The second assignment of error is without merit.
 {¶ 31} Defendant's third assignment of error states:
 {¶ 32} "The trial court erred to Appellant's prejudice in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution when it failed to conduct an in-camera inspection of the officer's observations."
 {¶ 33} Within this assignment of error defendant asserts that the trial court erred in failing to conduct an in-camera review of Officer Bechtel's report pursuant to Crim.R. 16(B)(1)(g).
 {¶ 34} Those portions of police reports recording the officer's personal observations and recollections of the events are subject to scrutiny under Crim.R. 16(B)(1)(g); State v. Jenkins (1984),15 Ohio St.3d 164, 473 N.E.2d 264. Those portions which recite matters beyond the witness' personal observations, such as notes regarding another witness' statement or the officer's investigative decisions, interpretations and interpolations, are privileged and excluded from discovery under Crim.R. 16(B)(2). Id. Reports or notes taken by a police officer during an interview with a victim or witness in a case are not considered a statement for the purposes of Crim.R. 16(B)(1)(g);State v. Spraggins, Cuyahoga App. No. 87256, 2006-Ohio-739. *Page 12 
 {¶ 35} In this matter, as the trial court aptly noted, the report was an investigative report and not a witness statement. As such, Crim.R. 16(B)(1)(g) is not applicable.
 {¶ 36} This assignment of error is without merit.
 {¶ 37} Defendant's fourth assignment of error states:
 {¶ 38} "Appellant received ineffective assistance of counsel guaranteed by Article I, Section 10 of the Ohio Constitution and theSixth and Fourteenth Amendments to the United States Constitution when his attorney failed to object to improper victim impact testimony."
 {¶ 39} Within this assignment of error, defendant complains that his trial counsel was ineffective for failing to object to "prior bad acts" evidence linking him to a weapon, and to victim impact evidence.
 {¶ 40} We do not accept the contention that this evidence concerned "prior bad acts." Rather, the testimony indicated that defendant possessed a silver .25 caliber semi-automatic handgun, and this was probative of the allegations that the rapist had a silver gun.
 {¶ 41} As to the victim impact contention, we note that courts generally exclude this evidence because it is irrelevant and immaterial to the guilt or innocence of the accused and mainly serves to inflame the passion of the trier of fact. See State v. White (1968),15 Ohio St.2d 146, 151, 239 N.E.2d 65. However, victims may testify *Page 13 
as to how a crime has impacted their lives, particularly when the "circumstances of the victims are relevant to the crime as a whole."State v. Williams, 99 Ohio St.3d 439, 2003-Ohio-4164, 793 N.E.2d 446, citing State v. Lorraine (1993), 66 Ohio St.3d 414, 420, 613 N.E.2d 212.
 {¶ 42} In this matter, we conclude that the testimony at issue focuses upon the manner in which the offenses have impacted the lives of the victims and was relevant to the offenses as a whole. Cf. State v.Eads, Cuyahoga App. No. 87636, 2007-Ohio-539 ("Just as the victim of a felonious assault may testify to the treatment needed as a result of the assault in order to prove that the assault actually did occur, so may the victim of a sexual assault testify to the lingering trauma suffered as a result of that abuse."). In any event, we find no prejudicial error in light of the great weight of the evidence against defendant.
 {¶ 43} Defendant's fifth assignment of error states:
 {¶ 44} "The Appellant's convictions for rape, aggravated robbery, felonious assault and kidnapping were against the manifest weight of the evidence."
 {¶ 45} In evaluating a challenge to the verdict based on manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52, *Page 14 678 N.E.2d 541. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id. at 387.
 {¶ 46} As explained by the Ohio Supreme Court:
 {¶ 47} "Weight of the evidence concerns `the inclination of the greater amount of credible evidence offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'" Id.
 {¶ 48} The evidence in this matter indicated that defendant asked the women for a ride to the store, asked to be driven to a location, that he then got out of the car and returned producing a silver gun. The evidence further demonstrated that defendant repeatedly raped the women and used the gun to strike A.C. and also struck the other women. Vaginal and rectal swabs taken from A.C. were positive for semen, and her underwear also tested positive for semen. DNA analysis of the swabs contained a mixture of A.C.'s and M.G.'s DNA, indicating that they had sex with the same individual in a short period of time. Vaginal swabs from B.S. contained a sperm profile consistent with defendant and the expected frequency of such profile is 1: 120,600,000,000,000,000,000. *Page 15 
 {¶ 49} From the foregoing, we cannot conclude that the jury lost its way in convicting defendant of the offenses. This claim is without merit.
 {¶ 50} Defendant's sixth assignment of error states:
 {¶ 51} "The evidence was insufficient, as a matter of law, to prove `by clear and convincing evidence' that Appellant `is likely to engage in the future in one or more sexually oriented offenses.'"
 {¶ 52} A sexual predator is "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses. R.C.2950.01(E).
 {¶ 53} In determinating whether an offender is a sexual predator, the court must consider the factors enumerated in R.C. 2950.09(B)(2):
 {¶ 54} "(a) The offender's age;
 {¶ 55} "(b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 {¶ 56} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 {¶ 57} "(d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 {¶ 58} "(e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 {¶ 59} "(f) If the offender previously has been convicted of or pleaded guilty to *Page 16 
any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 {¶ 60} "(g) Any mental illness or mental disability of the offender;
 {¶ 61} "(h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 {¶ 62} "(i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 {¶ 63} "(j) Any additional behavioral characteristics that contribute to the offender's conduct." See R.C. 2950.09.
 {¶ 64} This statute does not mandate that each factor be satisfied; instead, it simply requires the trial court to consider all the factors which are relevant to its determination. State v. McBooth, Cuyahoga App. No. 85209, 2005-Ohio-3592.
 {¶ 65} A trial court's determination that an offender is a sexual predator must be supported by clear and convincing evidence, R.C.2950.09(B)(4), and it is the state's burden to establish such proof.State v. Eppinger (2001), 91 Ohio St.3d 158, 163, 2001-Ohio-247,743 N.E.2d 881. Clear and convincing evidence is "that *Page 17 
measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954),161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus.
 {¶ 66} Where the determination is based upon a single incident it may be upheld if there is clear and convincing evidence that he committed a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses. See State v. Mruk, Lucas App. No. L-04-1213, 2006-Ohio-590; State v. Senyak (Feb. 11, 1999), Cuyahoga App. No. 72611.
 {¶ 67} In this matter, the evidence demonstrated that defendant had two drug-related convictions, and two arrests for domestic violence. With regard to this matter, there were multiple victims and all were teenagers. The trial court also noted that defendant displayed extreme cruelty as he struck the women and threatened them and also showed no remorse.
 {¶ 68} Although defendant's STATIC 99 score placed him in the "medium-low" category for re-offending, it was established that this score was premised upon incorrect information that defendant knew the victims.
 {¶ 69} From the foregoing, we find sufficient evidence to support the sexual predator determination in this instance.
 {¶ 70} Defendant's seventh assignment of error states: *Page 18 
 {¶ 71} "The trial court failed to make a finding that the Appellant's sentence is consistent with similarly situated offenders."
 {¶ 72} R.C. 2929.11(B) provides as follows:
 {¶ 73} "A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."
 {¶ 74} The goal of felony sentencing pursuant to R.C. 2929.11(B) is to achieve "consistency" not "uniformity." State v. Klepatzki, Cuyahoga App. No. 81676, 2003-Ohio-1529. Moreover, in State v. Hunt, Cuyahoga App. No. 81305, 2003-Ohio-175, this court held that "R.C. 2929.11(B) does not require the trial court to engage in an analysis on the record to determine whether defendants who have committed similar crimes have received similar punishments." The court is not required to make express findings that the sentence is consistent with other similarly situated offenders. State v. Richards, Cuyahoga App. No. 83696, 2004-Ohio-4633;State v. Harris, Cuyahoga App. No. 83288, 2004-Ohio-2854. Rather, the statute indicates the trial court's comments made at the hearing should reflect the court considered that aspect of the statutory purpose in fashioning the appropriate sentence. State v. Edmonson,86 Ohio St.3d 324 at 326-327, 1999-Ohio-110, 715 N.E.2d 131; State v. Hunt, supra. *Page 19 
 {¶ 75} In this matter, the record reflects that the trial court considered the issue of consistency when fashioning a sentence which allowed for concurrent terms with regard to the separate rapes committed upon each woman and in ordering the aggravated robbery, felonious assault, and kidnapping terms to be served concurrently with the terms imposed for the rapes of the three women.
 {¶ 76} This claim is accordingly without merit.
Reversed and remanded as to the charge of having a weapon while under disability and affirmed in all other respects.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 JAMES J. SWEENEY, P.J., and PATRICIA ANN BLACKMON, J., CONCUR. *Page 1