[Cite as *State v. Butts*, 2020-Ohio-1498.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                         :

    Plaintiff-Appellee,          :

    v.                                      :

TAMIR H. BUTTS,                    :

    Defendant-Appellant.      :

No. 108381

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 16, 2020

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-622310-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Ronni Ducoff, Assistant Prosecuting Attorney, *for appellee.*

David L. Doughten, *for appellant.*

FRANK D. CELEBREZZE, JR., J.:

{¶ 1} Defendant-appellant, Tamir Butts ("appellant"), brings the instant appeal challenging his convictions and sentence. Specifically, appellant argues that the trial court erred by permitting the state's expert witness to testify to matters

beyond that witness's expertise, and the trial court failed to consider relevant sentencing options. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶ 2} The instant case is the result of sexual abuse suffered by the victim, K.R., at the hands of appellant. K.R. was seven years old when appellant began sexually abusing her, and the abuse continued as K.R. was eight and nine years old. Appellant and K.R.'s mother, I.P. (hereinafter "mother"), were in a relationship, and had a child together. From 2008 through 2011, appellant, mother, and K.R. all lived together. Appellant and mother had a child together, L.P., and their child also resided in the home. During this time that they all lived together, mother frequently worked in the afternoons and was away from the home in the early evenings. While mother was at work, appellant cared for K.R. and L.P. Sometime in 2011, mother ended her relationship with appellant, and they ceased living together.

{¶ 3} Thereafter, mother began a relationship with another man, M.H. At some point in 2013, mother, K.R., and L.P. began living together with M.H. At this time, mother was still working afternoons, and while she was at work, M.H. would care for K.R. and L.P. After several years of living together, M.H. told mother that K.R. was distant with him and was standoffish towards him. In January 2017, mother approached K.R., and asked her why she was distant and standoffish around M.H. In response to this inquiry, K.R. disclosed to her mother that appellant had sexually assaulted her in the past.

{¶ 4} On October 20, 2017, a Cuyahoga County Grand Jury returned a 16-count indictment against appellant. Appellant was charged with four counts of rape, violations of R.C. 2907.02(A)(1)(b), with sexually violent predator specifications (Counts 1, 5, 9, and 13). Counts 1, 5, and 9 contained furthermore specifications alleging that the victim was under the age of 10 at the time the offenses were committed, and that appellant forced the victim to submit by force or threat of force. Count 13 contained a furthermore specification alleging that the victim was between the ages of 10 and 13 at the time the offense was committed and that appellant forced the victim to submit by force or threat of force. Appellant was also charged with four counts of gross sexual imposition ("GSI"), third-degree felony violations of R.C. 2907.05(A)(4), with sexually violent predator specifications (Counts 2, 6, 10, and 14); four counts of kidnapping, first-degree felony violations of R.C. 2905.01(B)(2), with sexual motivation and sexually violent predator specifications (Counts 3, 7, 11, and 15). Counts 3, 7, and 11 contained a furthermore specification alleging that the victim was under the age of 13, appellant was not a parent of the victim, and that the offense was committed with a sexual motivation. Count 15 contained a furthermore specification alleging that the victim was under the age of 18 and that appellant was not a parent of the victim. Finally, appellant was charged with four counts of endangering children, second-degree felony violations of R.C. 2919.22(B)(1), with furthermore specifications alleging that the offense caused serious physical harm to the victim (Counts 4, 8, 12, and 16).

{¶ 5} The indictment alleged that Counts 1-4 were committed on or about September 11, 2008, to September 10, 2009. The indictment alleged that Counts 5-8 were committed on or about September 11, 2009, to September 10, 2010. The indictment alleged that Counts 9-12 were committed on or about September 11, 2010, to September 10, 2011. The indictment alleged that Counts 13-16 were committed on or about September 11, 2011, to December 31, 2011. Appellant pled not guilty to the indictment at his November 3, 2017 arraignment.

{¶ 6} A jury trial commenced on February 4, 2019. Appellant waived his right to a jury on the sexually violent predator specifications underlying Counts 1, 2, 3, 5, 6, 7, 9, 10, and 11. Before the jury was selected, the state moved to amend the dates pertaining to Counts 9, 10, 11, and 12 from occurring on or about September 11, 2010, to September 10, 2011, to occurring on or about September 11, 2010, to June 1, 2011. The state also dismissed Counts 13, 14, 15, and 16, pertaining to the period of time between September 11, 2011, and December 31, 2011. (Tr. 18-19.)

{¶ 7} At trial, the state presented several witnesses, most notably, K.R., mother, Detective Jennifer Kroczak with the Euclid Police Department, the lead investigator assigned to the case, and Kirsti Mouncey, chief clinical officer at the Cleveland Rape Crisis Center. Appellant presented no witnesses.

{¶ 8} On February 11, 2019, at the close of the state's case-in-chief, appellant's counsel moved for a Crim.R. 29 judgment of acquittal. The trial court denied the Crim.R. 29 motion as it pertained to Counts 1, 2, and 3 (rape, GSI, and kidnapping); and the endangering children offenses charged in Counts 4, 8, and 12

were amended from second-degree felonies to first-degree misdemeanors by deleting the furthermore specifications. The trial court determined that the state failed to present sufficient evidence that the victim suffered serious physical harm.

{¶ 9} On February 13, 2019, the jury returned its verdict. The jury found appellant guilty of rape on Counts 1, 5, and 9 and guilty of the underlying furthermore specifications; the trial court found appellant not guilty of the underlying sexually violent predator specifications. The jury found appellant guilty of GSI on Counts 2 and 10, but not guilty of GSI on Count 6; the trial court found appellant not guilty of the underlying sexually violent predator specifications. The jury found appellant guilty of kidnapping, the underlying furthermore specifications, and the sexual motivation specifications on Counts 3, 7, and 11; the trial court found appellant not guilty of the underlying sexually violent predator specifications. The jury found appellant guilty of first-degree misdemeanor endangering children on Counts 4, 8, and 12. The trial court ordered a presentence investigation report and set the matter for sentencing.

{¶ 10} The trial court held a sentencing hearing on March 6, 2019. The trial court merged Counts 1, 3, and 4; Counts 5, 7, and 8; and Counts 9, 11, and 12. The state elected to sentence appellant on the rape offenses charged in Counts 1, 5, and 9. The trial court imposed a sentence of life imprisonment with parole eligibility after serving 25 years: 25 years to life on Count 1; five years on Count 2; 25 years to life on Count 5; 25 years to life on Count 9; and five years on Count 10. The trial

court ordered the counts to run concurrently to one another. The trial court's sentencing entry was journalized on March 8, 2019.

{¶ 11} On April 3, 2019, appellant filed this appeal challenging the trial court's judgment. He assigns two errors for review:

> I. The trial court erred by permitting a state expert to testify to matter[s] that were both beyond her expertise and unfairly prejudicial as the jury was likely to misuse the information as a substitute for substantive evidence.

> II. The trial court erred in the sentencing procedure as [the trial court] failed to consider a sentencing option of life with parole eligibility after fifteen years pursuant to R.C. 2971.03(B)(1)([c]).

## II. Law and Analysis

### A. Expert Witness Testimony

{¶ 12} In appellant's first assignment of error, he argues that the trial court erred when it permitted the state's expert witness, Kirsti Mouncey, to testify to matters beyond the scope of her expertise as defined by the trial court.

### 1. Trial Testimony

{¶ 13} Mouncey is the chief clinical officer at the Cleveland Rape Crisis Center.[1] As a state's witness, Mouncey drafted an expert report detailing the effects that trauma has on child victims of sexual abuse. In drafting her report, Mouncey reviewed the police reports and the video of K.R.'s interview with Detective Kroczak. Mouncey did not personally interview K.R. Mouncey testified at trial to her findings

---

[1] As described by Mouncey's trial testimony, the Cleveland Rape Crisis Center provides "comprehensive services from counseling, to advocacy, to education, to prevention services" for sexual abuse victims. (Tr. 872.)

within the report but the report was not admitted as an exhibit for the jury's consideration.

{¶ 14} The state presented Mouncey as an expert witness to testify to the general effects that trauma has on child victims of sexual abuse. Mouncey opined that trauma, specifically as a result of sexual abuse, manifests general behaviors or symptoms in children. Mouncey further opined that trauma can ultimately have an effect on how and when a child discloses sexual abuse. The state presented Mouncey's testimony to explain (1) why K.R. had not immediately disclosed the sexual abuse, and (2) how the trauma from the sexual abuse affected K.R.

{¶ 15} At trial, mother testified that she and appellant ended their relationship sometime in 2011. Thereafter, mother moved into her father's home with K.R. and L.P. Mother's boyfriend, M.H., also moved into the home. There were several individuals living in mother's father's home, including mother's sisters. This living arrangement lasted for approximately four years between 2012 and 2016. Mother specifically testified that while the family was living at her father's house, "[K.R.] was mostly interacting with my sisters." (Tr. 554.)

{¶ 16} When mother and her children moved out of her father's house and into their own apartment with M.H., K.R.'s behavior changed. Specifically, mother testified that "I could tell [K.R.] was distant like when I [would] leave to go to work, she would go in her room and close the door." (Tr. 555.) Mother explained that "I noticed that [K.R.] was a little bit distant with [M.H.] too but I thought maybe I just, you know, it was just her being a teenager, you know." (Tr. 555.) M.H. informed

mother that while she was at work and M.H. was watching the children, K.R. would go into her bedroom, and would not come out.

{¶ 17} Mouncey initially testified about preliminary matters, including her training, education, and job requirements. The state then moved the trial court to declare Mouncey an expert witness. The state sought to declare Mouncey an expert witness in regard to the effects that trauma has on child victims of sexual abuse. Appellant's counsel objected on the basis that Mouncey could not testify on the subject of neurobiology.[2] A sidebar was held to discuss the anticipated scope of Mouncey's testimony. After the sidebar, the trial court decided to dismiss the jury so the parties could voir dire Mouncey and inquire about her expertise and anticipated testimony. The jury was dismissed, and both parties had an opportunity to question Mouncey.

{¶ 18} Following the inquiry, the trial court made the following ruling regarding the scope of Mouncey's expertise:

> I don't believe she is going to be testifying as a neurobiology expert. I believe she is going to be talking about the trauma of a rape victim and the reactions of that. I'm going to allow her to be an expert on that area, but not get into the neurobiology aspect of that if you understand.

(Tr. 892.) Mouncey was declared an expert witness with regard to the effect that trauma has on child victims of sexual abuse, including the effect of a victim's delay in disclosure of sexual abuse.

---

[2] Generally speaking, neurobiology is the study of how the nervous system processes information and affects one's behavior.

## 2. Expert Testimony

{¶ 19} Expert testimony is governed by Evid.R. 702, which provides that a witness qualified as an expert by knowledge, skill, experience, training, or education may have his or her testimony presented in the form of an opinion or otherwise. Furthermore, "if a person has information which has been acquired by experience, training or education which would assist the trier of fact in understanding the evidence or a fact in issue and the information is beyond common experience, such person may testify." *State v. Boston*, 46 Ohio St.3d 108, 118, 545 N.E.2d 1220 (1989). Expert testimony is subject to the relevancy requirements of Evid.R. 402 and 403.

{¶ 20} "'The determination of the admissibility of expert testimony is within the discretion of the trial court.'" *State v. Harris*, 2018-Ohio-578, 107 N.E.3d 658, ¶ 38 (8th Dist.), quoting *State v. Cook*, 11th Dist. Lake No. 2016-L-079, 2017-Ohio-7953, ¶ 40, citing Evid.R. 104(A). This determination of expert testimony will not be disturbed on appeal absent an abuse of discretion. *Id.* An abuse of discretion indicates unreasonableness, arbitrariness, or unconscionability. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 21} In the instant matter, appellant does not contest Mouncey's qualifications as an expert. Rather, he challenges the scope of Mouncey's testimony, arguing that Mouncey's testimony went beyond the scope of the effect of trauma on child victims of sexual abuse and included impermissible testimony on the subject of neurobiology.

{¶ 22} First, we do not agree with appellant that Mouncey's testimony included the subject of neurobiology. Appellant actually concedes that Mouncey did not directly reference or testify to the subject of neurobiology. He argues, however, that matters related to the subject of neurobiology can be inferred from the totality of Mouncey's testimony. Appellant does not specify or cite to any examples in the record to support his assertion that Mouncey testified, indirectly or implicitly, regarding the subject of neurobiology. App.R. 16(A)(7).

{¶ 23} After reviewing the record, and Mouncey's trial testimony, we do not find that she testified on the subject of neurobiology or otherwise exceeded the scope of her expertise or the trial court's recognition thereof. In fact, the record reflects that Mouncey exercised caution to avoid exceeding the scope of her expertise and testifying about matters involving neurobiology. Mouncey was asked the following question on direct examination: "So with regard to reactions of the body and trauma, what other reactions does the body have when an individual is engaged in an instance of trauma or sexual abuse?" (Tr. 906.) In response, Mouncey opined,

> So there are a lot of different ways someone can react in the aftermath of the trauma to the trauma so no one displays the same symptoms as another, but typically after the incident is over, *and I know I'm not going into the brain piece,* but there are always symptoms that come from the abuse so something will happen where the trauma kind of reemerges in the person's life so a lot of victims will report that they have nightmares, they have flashbacks, they can't sleep.

(Emphasis added.) (Tr. 906-907.) In this instance, the record reflects that Mouncey carefully answered the question in order to comply with the trial court's ruling regarding her area of expertise.

{¶ 24} Appellant argues that Mouncey impermissibly testified about the effect that trauma has on the brain, its impact on recall, and the difference between the brain's storage of a traumatic and a nontraumatic memory. The following exchange took place between the prosecutor and Mouncey during direct examination:

> [Prosecutor]: How does trauma affect a victim's recall when abuse occurs over a longer period of time?
>
> [Mouncey]: It significantly impacts recall. Traumatic memory is stored very differently in the brain then nontraumatic memory. It goes back to the fact that the rational part of the brain is not on line when the trauma happens so it's again stored in sensory ways, and so we — one way it affects us, it's again the linear fashion, so our victim cannot tell you this is the first thing, this is the second thing. This is the timeline of the abuse. That is not possible due to the way it's stored, and then also there are just details that they can remember when we have the rational part of the brain engaged.
>
> We retain details like time, you know, again things that we can rationalize but it's not possible if the, if that piece of the brain is not on line during the trauma, so again it's stored in sensory ways. Smells, sounds, feelings, that's kind of the way someone will remember the trauma.

(Tr. 911-912.)

{¶ 25} Defense counsel did not object to Mouncey's testimony regarding recall, therefore, he has waived all but plain error. *See State v. Mathis*, 8th Dist. Cuyahoga No. 107365, 2019-Ohio-3654, ¶ 34, citing *State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637, ¶ 80. Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error will be recognized only where, but for the error, the outcome of the case would clearly have been different. *State v.*

*Sanders*, 92 Ohio St.3d 245, 257, 750 N.E.2d 90 (2001). The Ohio Supreme Court has emphasized that plain error is to be noticed "'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002), quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 26} We do not find that Mouncey's testimony about the effect that trauma has on a victim's recall exceeded the scope of her expertise or circumvented the trial court's ruling that she could testify as an expert in the area of rape trauma and a victim's reaction thereto. The testimony with which appellant takes issue was presented in the context of variables that affect the timing of a victim's disclosure and a victim's ability to recall specific details about abuse that occurs over an extended period of time. Mouncey's testimony was offered to explain that victims of prolonged abuse are unable to recall every specific detail about the abuse, or the exact chronological order in which the abuse took place. Mouncey's testimony was not outside of the scope of her expertise, nor presented, either directly or implicitly, in the context of, or in order to explain the scientific subject of neurobiology.

{¶ 27} Assuming, arguendo, that Mouncey did exceed the scope of her area of expertise, appellant has failed to demonstrate plain error. In light of the overwhelming evidence of appellant's guilt presented at trial, appellant cannot demonstrate that but for Mouncey's testimony about a victim's reaction to trauma, the effect that trauma has on a victim's ability to recall details, and the manner in

which traumatic memories are stored, the outcome at trial would have clearly been different.

{¶ 28} Appellant also argues that Mouncey's testimony constituted improper victim impact evidence and that Mouncey improperly vouched for the victim's allegations and credibility by asserting that the victim suffered from many of the symptoms of sexual abuse.

{¶ 29} First, appellant fails to note that his trial counsel's objection was limited to the scope of Mouncey's testimony, based upon which the trial court determined that she would not testify about the subject of neurobiology. Other than the scope of Mouncey's testimony and her lack of expertise on the subject of neurobiology, defense counsel did not object to Mouncey's testimony on other grounds. Accordingly, appellant arguably waived all but plain error with respect to the victim impact evidence and Mouncey's purported vouching of the victim's allegations and credibility. *See* Crim.R. 52(B) ("[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.")

{¶ 30} Appellant argues that he was unfairly prejudiced by Mouncey's testimony about the symptoms of trauma and sexual abuse K.R. exhibited during her recorded interview. He appears to contend that Mouncey should have been prohibited from testifying that K.R. exhibited symptoms consistent with experiencing the trauma of sexual assault. Appellant's argument is misplaced.

{¶ 31} The Ohio Supreme Court has noted that "[a]n expert witness's testimony that the behavior of an alleged child victim of sexual abuse is consistent with behavior observed in sexually abused children is admissible under the Ohio Rules of Evidence." *State v. Stowers*, 81 Ohio St.3d 260, 261, 690 N.E.2d 881 (1998). Furthermore, such an expert witness may testify "on the characteristic psychological symptoms of a typical abused child as evidence supporting allegations that a particular child has been abused." *State v. Nemeth*, 82 Ohio St.3d 202, 206, 694 N.E.2d 1332 (1998), fn. 1.

{¶ 32} In this case, the state was permitted to present expert testimony to establish that K.R. exhibited behaviors or symptoms of trauma resulting from sexual abuse. Therefore, the trial court did not abuse its discretion in permitting Mouncey to testify to K.R.'s behaviors and symptoms of sexual abuse.

{¶ 33} To the extent that appellant also argues that Mouncey impermissibly vouched for K.R.'s claims that appellant sexually abused her, we do not agree. As a general rule, "it is impermissible for an expert witness to offer his or her opinion as to the truth of a child's statements." *Harris*, 2018-Ohio-578, 107 N.E.3d 658, at ¶ 44. Examining the entirety of Mouncey's testimony, however, we do not find that she vouched for K.R.'s claims that appellant sexually abused her. Appellant acknowledges that Mouncey did not specifically testify that she believed the victim's allegations. The record reflects that Mouncey testified, based on her expertise, about the general behaviors exhibited by child victims of trauma and sexual abuse, and whether K.R.'s behaviors were consistent with a victim of sexual abuse.

{¶ 34} Mouncey also testified about the factors that impact when a child victim comes forward to disclose sexual abuse. Mouncey generally explained that disclosure may be hindered by a child's relationship with the perpetrator, the child may not have language skills to sufficiently describe the abuse, the family dynamic may hinder disclosure, and the child may experience guilt, fear, or shame. After describing these general factors, Mouncey testified about the factors that applied to K.R. in this case:

> Yes. I think I saw a lot of those factors that I just described. The child — the abuse was reported starting at the age of seven which is the time I described as children really not having language, the ability to really talk about and get what is happening to them. The perpetrator that was described is someone who lived with the victim, boyfriend of mom. There was a stepbrother involved so a lot of those dynamics were present.

(Tr. 905.)

{¶ 35} Mouncey furthered opined that delayed disclosures are more common in cases involving child victims, and a delayed disclosure is even more common when the perpetrator is known to the victim. (Tr. 900.) Mouncey explained that in most cases, a child will need "a significant amount of safety" before he or she comes forward to disclose the abuse. (Tr. 905-906.)

{¶ 36} Mouncey testified about her observations of K.R.'s interview and whether K.R. was in a safe position to disclose the abuse:

> [M]om was very persistent in approaching the victim to be that safe person which is another layer. It really requires a person that the victim feels safe with, and mom in that case was that person.

At that point the perpetrator was not living in that home any more so some of those things were going on.

(Tr. 906.) The following exchange occurred between the prosecutor and Mouncey on direct examination regarding the circumstances under which K.R. disclosed the abuse:

[Prosecutor]: Did [K.R.] describe any behaviors that she was displaying in order to bring the disclosure upon — bring the disclosure out.

[Mouncey]: Yes.

[Prosecutor]: And what were those?

* * *

[Mouncey]: I recall that mom noticed that [K.R.] displayed certain behaviors — isolation, not being — spending time in her room, and that mom really was aware that there was something going on, and she asked her about it, and then the disclosure occurred.

[Prosecutor]: And do you recall who she was isolating herself from?

[Mouncey]: There was a new boyfriend in the house, yes.

[Prosecutor]: And in your experiences is that common?

[Mouncey]: Yeah. I mean, you know, that's danger, right? So if we think about that the — the previous danger that she was exposed to of having a male figure in the house could easily be a threat and could feel like a very unsafe thing to have, so it's very understandable that she would prefer to isolate herself and keep herself safe.

[Prosecutor]: Would that have affected the ability to disclose?

[Mouncey]: Absolutely.

[Prosecutor]: How so?

[Mouncey]: Because again, you know, it's being reminded of the traumatic event. Having to recall, having to rethink, relive some of what has happened before and that's hard. That's really, really difficult. It's really challenging.

(Tr. 914-915.)

{¶ 37} After reviewing the record, and Mouncey's testimony about K.R.'s symptoms and disclosure as a whole, we find no basis upon which to conclude that Mouncey impermissibly vouched for the credibility of K.R.'s allegations or trial testimony. Mouncey's testimony pertained to the general behaviors and symptoms exhibited by child victims of sexual abuse, and whether or not K.R. exhibited these symptoms. As noted above, this testimony is permissible. *See Stowers*, 81 Ohio St.3d at 261, 690 N.E.2d 881. Therefore, the trial court did not abuse its discretion in permitting this testimony.

{¶ 38} Appellant further takes issue with Mouncey's reference to K.R. as a "survivor" and "victim." Appellant contends that these terms "are prejudicial in that they connote pre-judgment and create sympathy for the complainant, which is not a proper consideration for fact-determination." Appellant's brief at 13. Appellant's counsel failed to object, and, as a result, we review for plain error. Crim.R. 52(B).

{¶ 39} While describing her job duties and responsibilities, Mouncey used the term "survivor" when referring to clients of the Cleveland Rape Crisis Center. Mouncey explained that "survivor" is "an interchangeable term that also means victim, survivor. We use it. It's a more palatable term sometimes for folks that come

to our services.  It's a more friendly term so we use the term survivor but I can certainly say victim as well."  (Tr. 897.)

{¶ 40} After reviewing the record, we do not find that Mouncey's use of the term "survivor" or "victim" was prejudicial to appellant.  Mouncey used these terms in reference to clients of the rape crisis center, and in describing the duties and responsibilities of her job at the center.  Mouncey did not directly refer to K.R. as a survivor of sexual abuse.

{¶ 41} The record reflects that Mouncey did use the term "victim" throughout the course of her testimony, both in referring to child victims generally, and referring to K.R.  The prosecutor also used the term "victim" to refer to K.R.  Nevertheless, we find no basis upon which to conclude that referring to K.R. as the "victim" rose to the level of plain error.  In light of the overwhelming evidence of appellant's guilt, appellant cannot demonstrate that the outcome at trial would have been different but for Mouncey's use of the term "survivor" or "victim."

{¶ 42} Lastly, appellant argues that Mouncey unfairly and prejudicially "inject[ed] victim-impact evidence into the courtroom."  Appellant's brief at 16.  Specifically, appellant takes issue with Mouncey's testimony about the suffering and symptoms endured by victims.  Appellant cites to no authority in support of his argument.  App.R. 16(A)(7).

{¶ 43} Generally, trial courts will exclude victim-impact testimony "to the extent that such evidence is irrelevant and immaterial to the determination of whether the accused is guilty and instead mainly inflames the passion of the trier of

fact." *Mathis*, 8th Dist. Cuyahoga No. 107365, 2019-Ohio-3654, at ¶ 70, citing *State v. Priest*, 8th Dist. Cuyahoga No. 89178, 2007-Ohio-5958, ¶ 41. However, a victim may properly testify as to how a crime has impacted their lives "particularly when the 'circumstances of the victims are relevant to the crime as a whole.'" *Priest* at *id.*, quoting *State v. Williams*, 99 Ohio St.3d 439, 2003-Ohio-4164, 793 N.E.2d 446; *see also State v. Eads,* 8th Dist. Cuyahoga No. 87636, 2007-Ohio-539 (where this court noted that "[j]ust as the victim of a felonious assault may testify to the treatment needed as a result of the assault in order to prove that the assault actually did occur, so may the victim of a sexual assault testify to the lingering trauma suffered as a result of that abuse.") Additionally, to the extent such testimony also "'relates to the facts attendant to the offense'" it is admissible at trial. *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 126, quoting *State v. Fautenberry*, 72 Ohio St.3d 435, 440, 650 N.E.2d 878 (1995).

{¶ 44} In the instant matter, Mouncey's testimony is arguably related to the facts attendant to the offenses — K.R.'s delayed disclosure of the sexual abuse. However, Mouncey's testimony need not fall within the facts attendant context. Appellant fails to note that the trial court recognized Mouncey as an expert witness regarding the general effects that trauma has on child victims of sexual abuse. Mouncey's testimony fits squarely within the expert witness context, and therefore, cannot be considered improper victim-impact testimony. As such, we find no merit to appellant's argument that Mouncey's testimony constituted improper, prejudicial victim-impact evidence.

{¶ 45} For all of the foregoing reasons, we find no basis upon which to conclude that the trial court's rulings regarding Mouncey's testimony were unreasonable, arbitrary, or unconscionable, or that the trial court committed plain error in permitting Mouncey to testify about the effects of trauma and sexual abuse on child victims.  Appellant's first assignment of error is overruled.

## B. Appellant's Sentence

{¶ 46} In his second assignment of error, appellant argues that the trial court erred in sentencing him to life with parole eligibility after 25 years on his three rape convictions (Counts 1, 5, and 9).  Appellant contends that the trial court "failed to consider a sentencing option of life with parole eligibility after fifteen years" pursuant to R.C. 2971.03(B)(1)(b).  Appellant's brief at 19.

{¶ 47} Initially, we note that appellant was charged in Counts 1, 5, and 9 with rape, in violation of R.C. 2907.02(A)(1)(b), which provides, "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person."  These counts contained sexually violent predator specifications.  Appellant elected to try the sexually violent predator specifications to the bench, and the trial court found appellant not guilty of these specifications.

{¶ 48} The jury found appellant guilty on all three counts, concluding that K.R. was under the age of the 13 at the time of the offenses.  Counts 1, 5, and 9 also contained furthermore specifications alleging that the victim was under the age of

ten at the time the offenses were committed, and that appellant forced the victim to submit by force or threat of force. The jury also made the additional findings pursuant to the furthermore specifications, concluding that the victim was under the age of ten years old, and that appellant compelled her to submit by the use of force or threat of force.

{¶ 49} Based on the jury's verdict on the rape counts, appellant's sentence is governed by R.C. 2971.03(B). R.C. 2971.03(B)(1) provides, in relevant part,

> if a person is convicted of or pleads guilty to a violation of division (A)(1)(b) of section 2907.02 of the Revised Code committed on or after January 2, 2007, if division (A) of this section does not apply regarding the person, and if the court does not impose a sentence of life without parole when authorized pursuant to division (B) of section 2907.02 of the Revised Code, *the court shall impose upon the person an indefinite prison term consisting of one of the following*:
>
> (a) Except as otherwise required in division (B)(1)(b) or (c) of this section, a minimum term of ten years and a maximum term of life imprisonment.
>
> (b) If the victim was less than ten years of age, a minimum term of fifteen years and a maximum of life imprisonment.
>
> (c) If the offender purposely compels the victim to submit by force or threat of force, or if the offender previously has been convicted of or pleaded guilty to violating division (A)(1)(b) of section 2907.02 of the Revised Code or to violating an existing or former law of this state, another state, or the United States that is substantially similar to division (A)(1)(b) of that section, or if the offender during or immediately after the commission of the offense caused serious physical harm to the victim, a minimum term of twenty-five years and a maximum of life imprisonment.

(Emphasis added.)

{¶ 50} Appellate review of felony sentences is governed by R.C. 2953.08(G)(2) which states that "an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1, 21.

> "A sentence is not clearly and convincingly contrary to law 'where the trial court considers the purposes and principles of sentencing under R.C. 2929.11 as well as the seriousness and recidivism factors listed in R.C. 2929.12, properly applies post-release control, and sentences a defendant within the permissible statutory range.'"

*State v. Thompson*, 8th Dist. Cuyahoga No. 105785, 2018-Ohio-1393, ¶ 7, quoting *State v. A.H.*, 8th Dist. Cuyahoga No. 98622, 2013-Ohio-2525, ¶ 10.

{¶ 51} Appellant does not challenge that the trial court's consideration of the sentencing factors set forth in R.C. 2929.11 or 2929.12. Rather, he contends that the trial court did not *consider* R.C. 2971.03(B)(1)(b). Appellant appears to argue that his sentence is contrary to law because the trial court did not *consider* the prison term of life with parole eligibility after 15 years as listed in R.C. 2971.03(B)(1)(b). Appellant's argument is misplaced.

{¶ 52} The plain and unambiguous terms of the statute provide that the trial court "*shall impose* upon the person an indefinite prison term" under one of the three scenarios in R.C. 2971.03(B)(1)(a), (b), or (c). (Emphasis added.) The statute does not contain any specific language requiring trial courts to *consider* alternative

or more lenient sentences under the other subsections. Nor does the case law applying the statute impose such an obligation on the trial court at sentencing.

{¶ 53} Appellant's argument, that the trial court was required to consider the more lenient sentencing option under subsection (b), ignores the fact that the jury made the additional findings on the furthermore specifications — that K.R. was under the age of ten, and that appellant did compel her to submit by the use of force or threat of force. Based on the jury's verdict on Counts 1, 5, and 9, the trial court had two options for sentencing on the rape counts: (1) a prison term of "life without parole" in accordance with R.C. 2971.03(B)(1), or (2) "a minimum term of twenty-five years and a maximum of life imprisonment" in accordance with R.C. 2971.03(B)(1)(c).

{¶ 54} It is evident that the trial court determined that a sentence of life without parole was not appropriate. Therefore, the trial court was required to impose the "minimum term of twenty-five years and a maximum of life imprisonment" pursuant to R.C. 2971.03(B)(1)(c).

{¶ 55} The record reflects that the trial court complied with the applicable sentencing provisions. As noted above, the trial court sentenced appellant to a prison term of 25 years to life on the three rape counts, with "parole eligibility after serving 25 years," and ran those three counts concurrently. These prison terms are in accordance with appellant's convictions for violating R.C. 2907.02(A)(1)(b). These prison terms are also in accordance with R.C. 2971.03(B)(1)(c) based on the jury's additional findings on the furthermore specifications — that appellant did

compel the victim to submit by the use of force or threat of force, and that the victim was under the age of 10 at the time of the offenses. Finally, the trial court's sentences on the first-degree felony rape offenses are within the permissible statutory range under R.C. 2929.14(A)(1)(a).

{¶ 56} For all of the foregoing reasons, appellant's sentences on Counts 1, 5, and 9 are not contrary to law. Appellant's second assignment of error is overruled.

### III. Conclusion

{¶ 57} After thoroughly reviewing the record, we affirm appellant's convictions and the trial court's sentence. The trial court did not abuse its discretion or commit plain error in permitting Mouncey to testify as an expert witness about the effects that trauma has on child victims of sexual abuse. Appellant's sentences on the rape convictions are not contrary to law, and the trial court did not err in failing to consider more lenient prison terms under R.C. 2971.03(B)(1).

{¶ 58} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK D. CELEBREZZE, JR., JUDGE

PATRICIA ANN BLACKMON, P.J., CONCURS;
EILEEN A. GALLAGHER, J., CONCURS IN JUDGMENT ONLY WITH SEPARATE OPINION

EILEEN A. GALLAGHER, J., CONCURRING IN JUDGMENT ONLY:

{¶ 59} I concur with my learned colleagues as to the disposition of both assignments of error. I write separately however, because I disagree with the majority's analysis of the first assignment of error. Unlike the majority, I find that the state's rape trauma expert, Kirsti Mouncey, testified outside the scope of her expertise as determined by the court. However, because the offending testimony verged on inconsequential and because the evidence of guilt in the case was overwhelming, I think that although the error is clear, it is nevertheless harmless. Additionally, I disagree that our review is limited to plain error because I think Butts preserved his claim for appeal.[3]

{¶ 60} Towards the outset of Mouncey's testimony during trial, she claimed to be an expert in "trauma with a specialization in rape and sexual abuse." When the

_____
[3] In relevant part, Evid.R. 103(A) provides that where a defendant makes a timely and proper objection to evidence, "[o]nce the court rules definitely on the record, either before or at trial, a party need not renew an objection * * * to preserve a claim of error for appeal."

state moved for the court to qualify Mouncey as an expert, Butts objected.  He asked

the court for a sidebar.  At the sidebar the following discussion occurred:

> The Court:  Okay.  Go ahead.
>
> [Counsel]:  An expert as to what specifically?  An expert as to what — is she going to talk about neurobiological science or that she herself is licensed in that[,] as I would think we would have an issue there.
>
> [The State]:  Her testimony is not going to get into, you know, the scientific aspects of the brain or how the brain works.  Her testimony is just going to be based off of her training and experience[,] and how trauma affects the responses to which adolescents have.

(Tr. 878.)

{¶ 61} Outside of the jury's presence, the court subjected Mouncey to a voir

dire examination to determine her competency and the scope of her expertise.  After

direct and cross-examination, the court pronounced its ruling as to the permissible

scope of Mouncey's testimony:

> I don't believe she is going to be testifying as a neurobiology expert.  I believe she is going to be talking about the trauma of a rape victim and the reactions of that.
>
> I'm going to allow her to be an expert on that area, but not get into the neurobiology aspect of that if you understand.

(Tr. 892.)[4]

{¶ 62} Nevertheless, during her testimony, Mouncey's testimony exceeded

the court-determined bounds of her competency.   For example, when the

---

[4] Because Butts timely and properly objected, and because the court ruled definitely on the record, Butts was not subsequently required to renew his objection to preserve his claimed error on appeal.  *See* Evid.R. 103(A).

prosecutor inquired about what impact trauma has on a victim's ability to recall memories over time Mouncey responded:

> It significantly impacts recall. Traumatic memory is stored very differently in the brain than non[-]traumatic memory. It goes back to the [previously discussed] fact that the rational part of the brain is not on line when the trauma happens so it's again stored in sensory ways, and so we — one way it affects us, it's again the linear fashion, so our victim cannot tell you this is the first thing, this is the second thing. This is the timeline of abuse. That is not possible due to the way it's stored * * *.

(Tr. 911-912.)

{¶ 63} The court did not qualify Mouncey to discuss how the brain stores memory, in the context of trauma or otherwise. It did not qualify her to draw distinctions in types of memory. And it did find her competent to opine as to consequences that follow depending on how memory is stored. To the extent that Mouncey's testimony exceeded the scope of what the court deemed permissible it was improper.

{¶ 64} Nevertheless, the error was harmless. The offending evidence here was limited, both in terms of quantity as well as quality. Improper testimony notwithstanding, as the majority observed and which Butts does not challenge in any assigned error, there was overwhelming evidence of guilt in this case.